## Staunton.

STERLING AND ALS. V. WILKINSON AND ALS.

OCTOBER 6th, 1887.

1. GIFTS INTER VIVOS—*Donor's control.*—If the *choses in action* are so delivered as to vest in donee an equitable title in the fund they represent, and to divest donor of all present control over it absolutely and irrevocably, they are valid. But otherwise, if the delivery does not vest in donee such *present* right.

2. IDEM—*Invalid gifts— Valid assignments—Case at bar.—Choses in action* were deposited to be, *in case of depositor's death*, equally divided between his wife and children. Later, depositor authorized depository, in case of his death, to dispose of enough *choses* to secure himself against loss as depositor's endorser.

HELD:

The gift to wife and children is invalid; but the *choses* are liable to the debts of depository for which they had been assigned.

3. PERSONAL REPRESENTATIVES—*Laches—Liability—Joint bond—Case at bar.*—I, *as guardian,* held the *joint* bond of himself, H. Y. & L. H. & L. were insolvent. I. having died before the bond was collected, C., his administrator, by his *laches,* failed to collect and lost the half which Y. was bound for.

HELD:

C. is liable to make good Y.'s indebtedness.

Appeal from decree of circuit court of Rockingham county, rendered January 25th, 1886, in the creditors' suit of S. R. Sterling and others, complainants, against E. L. Conrad, administrator of A. B. Irick, deceased, H. H. Wilkinson and others, defendants. The decree being adverse to Sterling and Conrad they appealed. Opinion states the case.

*Sheffey & Bumgardner,* and *E. S. Conrad,* for the appellants.

*W. B. Compton, J. T. Harris, Jr.,* and *Strayer & Liggett,* for the appellees.

LACY, J., delivered the opinion of the court.

This suit, which was a general creditors' suit, was brought in April, 1878, by the appellant, on behalf of himself and all other creditors who would come in and contribute to the expenses of the suit, seeking a settlement of the estate of A. B. Irick, deceased, and to subject his estate, real and personal, to the payment of his debts. The bill set forth the debts due the plaintiff; and the other creditors, being convened, proved their debts. The bill stated that Irick, in his life-time, owned about $24,000 worth of stock, bonds and other personal property; that a short time before his death, Irick had placed a large amount of stocks, bonds, etc., in the hands of his son-in-law, H. H. Wilkinson, who received the same, to be held as collateral security to indemnify himself and his father, J. N. Wilkinson, as security or indorsers of said Irick, and that H. H. Wilkinson claimed, that after satisfying the debts for which the Wilkinsons were bound as indorsers, the residue was to be distributed among the children and widow of the said Irick; that when H. H. Wilkinson received these, he well knew that Irick was largely indebted, and that without these his estate would prove insolvent; that the stocks and bonds in Wilkinson's hands constituted the bulk of Irick's estate. By the use of these, his debts would be paid; without these, his estate would prove insolvent; and prayed an injunction to prevent Wilkinson from disposing of these bonds, stocks, etc. The injunction was awarded, and an account of the estate ordered by reference to one of the

court's commissioners in chancery. H. H. Wilkinson answered, denying any knowledge of Irick's insolvency, but admitting the possession of the bonds and stocks, and claiming them—*First*, to pay the debts for which he and his said father were security and indorsers for Irick; and *secondly*, for the benefit of Irick's widow and children—setting out the stocks and bonds in full. J. N. Wilkinson answered, claiming the benefit of these deposits, made with H. H. Wilkinson, alleging, as did H. H. Wilkinson, that they became the indorsers of Irick upon the faith of this transaction, gave his deposition, and filed Irick's promises, letters, bonds, notes, etc.

The deposition of H. H. Wilkinson was also taken, with which were filed papers of like import. From these it appeared that, on the thirty-first of January, 1877, Irick had written to H. H. Wilkinson, as follows, viz: "In consideration of the fact that you and your father have indorsed for my accommodation certain paper, I hereby authorize you, *in case of my death*, while there is still unpaid paper of mine indorsed by either you or your father, to dispose of enough of my effects in your hands to secure you and him against any loss. The note you gave me July 4, 1874, for $2,000 I consider as due by me, and is included in the above arrangement. After securing yourself and father, as above stated, what remains in your hands you will dispose of in accordance with your receipt given me January 18, 1874"; which was signed by Irick and attested by one Netherland. The receipt referred to in this letter was given by H. H. Wilkinson to Irick on the fifteenth of January, 1874, and was as follows, viz:

"Received of A. B. Irick the following bonds of the Rawley Springs Company: Nos. 153, 154, 155, 156, 157, 158, 31, 37, 33, 35, 50, 32, 34, 45, 30, 114, 113, 115, 119, 120, 118, 111, 116, 117, 112, 70, 79, 78, 76, 77, 63, 62, 200, 197, 196, 195,

191, 192, 194, 193, bearing interest at the rate of ten per centum, payable January 1st, July 1st. Principal due July 1, 1890. Pledging myself to pay the interest, when collected, to A. B. Irick, *and, in case of his death,* to divide the bonds equally between his wife and his four daughters, S. C. Dold, A. J. Wilkinson, V. S. and M. B. Irick. Also the following bonds on the same conditions as above: Four bonds issued by N. M. Crockett for fifteen hundred dollars each, and payable as follows: January 1, 1871, January 1, 1872, January 1, 1873, and January 1, 1874, with legal interest. Also four bonds of M. C. Reynolds for fifteen hundred dollars each, and payable as those of N. M. Crockett described above.

[Signed]     " H. H. WILKINSON.
" *Harrisonburg, Va.,* January 15, 1874."

Another receipt had been given by Wilkinson to Irick before the letter of January, 1877. This was on the tenth of October, 1876, and is as follows, viz:

" Received of A. B. Irick the following first mortgage bonds of the Rawley Springs Company, which I am to hold in trust for his children: 54, 67, 68, 88, 89, 90, 150, 151, 152, 159.

[Signed]     " H. H. WILKINSON."

The cause having been referred to a commissioner, a bond was reported against the estate of Irick, of which the following is a copy:

" $2,394.37. One day after date, we jointly promise to pay A. B. Irick, guardian for Martha Fitzgerald, the sum of two thousand three hundred and ninety-four dollars and thirty-seven cents; and we hereby waive the benefit of our homestead exemption as to this obligation.

" Witness our hands and seals this eighteenth day of May, 1875.

[Signed]     "A. B. IRICK,     ·     [Seal.] ⎫
             " M. G. HARMAN,     [Seal.] ⎪ Jointly.
             " CHAS. A. YANCEY,  [Seal.] ⎬
             " J. A. LOWENBACH." [Seal.] ⎭

Irick in his life-time having qualified as the guardian of the infant, Martha Fitzgerald, settled his account before a commissioner as such guardian ; and being shown by this account to be indebted to his infant ward in a considerable amount, deposited this bond along with others with the said commissioner to secure the debt due his ward. At his death this bond was turned over to his personal representative, the appellant E. L. Conrad, together with all the others deposited with it. The administrator sued on all the other bonds, but did not sue on this. The obligor, Charles A. Yancey, who was the uncle and law partner of the administrator (Conrad), was the only solvent obligor on the bond when Irick died. Yancey made some payments on the bond, and made a deed conveying all his property in trust to the administrator and another to pay debts, leaving this debt out, and died insolvent.

The accounts in the cause, being taken by the commissioner, were reported to the court on the twenty-third day of September, 1885. In the mean time the appellant, S. R. Sterling, had filed his petition in the cause, claiming, by assignment from the widow and children of Irick, all their rights in the bonds and stocks deposited with H. H. Wilkinson. The commissioner reported adversely to the petition of Sterling, and submitted the question to the court. The said commissioner reported adversely also to the claim of the children and widow of Irick, and of their assignee, Sterling, to the bonds and stocks deposited with H. H. Wilkinson, January, 1874, and October, 1876, as

evidenced by his receipts of those dates respectively, and reported that these should be subjected—*First*, to .the claim of one Lockwood, trustee for Mrs. Chase, who claimed as a purchaser for value without notice as to a part of them; *secondly*, that they were liable under the letter of January 31, 1877, to H. H. Wilkinson, to the debts for which the Wilkinsons were bound as security and indorsers for Irick; *thirdly*, for the debt due Irick's ward, Martha Fitzgerald; and, *fourthly*, to be distributed ratably among the debts against the estate of A. B. Irick. And, as to the Irick, Harman, Yancey, and Lowenbach bond set forth above, that E. L. Conrad had made himself liable for that, as the administrator of Irick, by his *laches* in collecting it. And upon all these points the court sustained the commissioner's report, and decreed accordingly, overruling the exceptions to the commissioner's report as to them, and recommitted the report for further accounts and report, and provided for the collection of the assets of Irick's estate in the hands of the general receiver, and payments in accordance with the said decree. From this decree an appeal was obtained by Sterling and Conrad to this court.

The first error assigned is as to the action of the court in overruling the claim of the widow and children of Irick to the bonds and stocks left with H. H. Wilkinson, in January, 1874, and in October, 1876. It is claimed that these created a trust in the hands of Wilkinson for the benefit of the widow and children of Irick; and that it was a settlement by Irick, upon a good and meritorious consideration, which was irrevocable by him; and that his assignment to Wilkinson of January, 1877, was a pretended assignment, which was beyond the power of Irick, he having finally parted with all control over them, and Wilkinson having distinctly accepted the trust, could not affect the rights of the beneficiaries thereunder, by any collusion with Irick, for his own benefit, or otherwise. It is true

that a man has a right to do what he pleases with his own, and may give his property to his wife and children, or to a trustee for their benefit ; and a meritorious consideration is sufficient to sustain the validity of such a settlement. If this trust be once perfectly created, it is irrevocable. In such cases the first perfectly created trust is secured, and cannot be revoked by the settler unless the power to revoke is directly or impliedly reserved in the instrument.

Gifts *inter vivos* are upheld if the notes or bonds or *choses* in action are delivered to the donee so as to vest him with an equitable title to the fund they represent, and to divest the donor of all present control and dominion over it, absolutely and irrevocably ; and a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation according to its terms, will not suffice. A delivery which confers on the donee power to control the fund, only after the death of the donor, when by the instrument itself it is presently payable, is testamentary in character, and not good as a gift.  See the opinion of Mr. Justice Matthews, in *Basket* v. *Hassel*, 107 U. S. 602, and the authorities cited. In that case the certificate of deposits was indorsed to the donee. "No one else—then not till my death. My life seems to be uncertain. I may live through this spell. Then I will attend to it myself." The court said : "The indorsement which accompanied the delivery qualified it, and limited and restrained the authority of the donee in the collection of the money so as to forbid its payment until the donor's death. The property in the fund did not presently pass, but remained in the donor, and the donee was excluded from its possession and control during the life of the donor. That qualification of the right which would have belonged to him if he had become the present owner of the fund, establishes that there was no delivery of pos-

session, according to the terms of the instrument, and that as the gift was to take effect only on the death of the donor, it was not a present executed gift *causa mortis*, but a testamentary disposition."

In this case, the gift was not only to take effect only upon the death of the donor, and the interest reserved to the donor while living, but the express provision was: "*In case of his death*," the fund was to be divided between the named persons. What did this mean? Can the donor, then in failing health, and approaching his end, which was not far off, be held to mean that there was any uncertainty about his death? He must have known, as all men know, that death is certain, and was certain to come to him. Why did he not, then, say, *at my death?* The words, "in case of my death," were probably, intended and understood to mean, "in case of my death without otherwise disposing of them," and it seems that, as he did not die for some years, he did make other disposition of them to a large extent. There was a condition attached to his gift, that it was not to take effect until the donor's death; and as it could not take effect in his life-time it could not take effect at all. It was an imperfect gift, and the court cannot do for the donee what the donor did not do—make it a perfect gift.

There is no report by the commissioner as to the indebtedness of Irick at the time these papers were executed; but it is argued that his object was to avoid the payment of his debts; and the accounts taken show the existence of considerable indebtedness in 1874, and much greater in 1876, which continue to be developed, until his estate would be rendered insolvent, were the creditors to be deprived of these bonds and stocks for the payment of their debts; and whether the deposit with Wilkinson, in 1876, was intended to take effect before Irick's death or not, which is not clear, this gift to his children was voluntary, and can-

not be upheld against his creditors. He had certainly, at that time, received the estate of his ward, the appellee, Martha W. Fitzgerald, which he has never paid over; and the same is true as to other debts of considerable amount; and while this gift, or deposit with H. H. Wilkinson, was upon a meritorious consideration, it was voluntary, and cannot be supported or upheld against the creditors of said Irick, and is properly set aside in their favor—the said property subjected to the payment of their debts.

The circuit court of Rockingham held that these papers did not create a trust; but that these securities still remained the property of Irick, under his contract, and liable for his debts; and held that they were liable to the debts of Wilkinson for which they had been assigned to him, and that he and his father were entitled to indemnity out of their proceeds; and in this, we think, there is no error.

The question concerning the trustee of Mrs. Chase is not before the court; the appeal as to her, having been dismissed.

As to the bond of Irick, Harman, Yancey and Lowenbach, the appellees confess error, as to the liability of Conrad, administrator of Irick, as to one-half of the bond. And this is clear, as the bond is expressly made a joint bond; and Irick could never have collected more than half of it from Yancey, nor could his administrator. But as the administrator did not take any steps to enforce the collection of this one-half of the bond, in accordance with his duty as administrator, holding it while the obligor was solvent, suffering him to become insolvent, and to convey all of his property to the exclusion of this debt, he must, upon well-settled principles, be held to have made himself liable for what he could have made out of the obligor, Yancey, which is one-half of this bond. But he must be credited, *as upon this one-half,* with all collections,

already made. And the decree against appellant Conrad, having been rendered in a large sum, by reason of his appeal, he is entitled to his costs here. And the decree of the circuit court of Rockingham will be reversed for this error, and otherwise affirmed, and the cause remanded to the said circuit court of Rockingham for further proceedings to be had therein in accordance with this opinion in order to a final decree.

DECREE REVERSED IN PART AND AFFIRMED IN PART.