AUGUSTA SAVINGS BANK, in equity, *vs.* JOHN B. FOGG, EXR.

and

DOROTHY J. DEARBORN.

Kennebec.    Opinion May 27, 1890.

*Gift.    Delivery.    Bank deposit.    Imperfect gift.*

The gift of a savings bank book, *inter vivos*, to be valid must be completed by an actual delivery from the donor to the donee, or to some one for the donee.

A gift, *inter vivos*, will not be sustained if the agent was not to deliver the property until after the death of the donor. Such a disposition would be inoperative under the statute of wills.

ON REPORT.

This was a bill of interpleader brought by the Augusta Savings Bank to ascertain the legal title to a deposit of $1,323.22, made by one Amos C. Hodgkins, the claimants being John B. Fogg, as executor of said Hodgkins' estate, and Dorothy J. Dearborn, a sister of the testator, as his donee.

Answers were duly filed, and after a decree of interpleader, they were by agreement taken as the pleadings ; and the case was reported to the law court on the pleadings and testimony. The evidence consisted of the testimony of Fogg, the executor, and of Mrs. Paul, at whose house Hodgkins lived six months prior to his death, the deposit book itself, and book entries in the bank.

It appeared that Hodgkins died testate at Monmouth, July 29, 1887. During his lifetime, he had deposited in the Augusta Savings Bank in the name of "Dorothy J. Dearborn or Amos C. Hodgkins" various sums of money beginning July 6, 1885, and continuing the deposits till shortly before his death. Many of the items of deposit were dividends transferred to this account from other accounts of his in the same bank.

The question for the court to determine was whether, at the time of his death, the title to the sum represented by the bank book was in Dorothy J. Dearborn, who claimed it as a gift *inter vivos*, or in his estate.

The material parts of the answer of Fogg, the executor, are as follows :—

That all said moneys deposited by said testator, as aforesaid, were the sole property of said testator at the time when the same were deposited, and that he caused the same to be deposited in the manner specified in the bill of complaint and the depositor's book to be issued as therein specified, in order that he might draw interest thereon and might avoid the rule of said bank and provisions of revised statutes limiting the amount of deposit from any one person to two thousand dollars, and for no other purpose, inasmuch as during all of said time said testator had in said bank in his own name a deposit of two thousand dollars.

He further alleges and affirms that said Amos C. Hodgkins during the whole of his lifetime after he made said deposits had and exercised the absolute and unqualified ownership, possession and control of said depositor's book and of the funds specified therein and the interest accruing thereon; and that neither Dorothy J. Dearborn, nor any other person, ever had any right whatsoever to said book or said property or any part thereof, during the lifetime of said Amos C. Hodgkins.

He further claims that said Amos C. Hodgkins made no disposition whatever of said deposits or any part thereof in his lifetime, and at his decease the same became and still are a part of his estate and as such should be transferred to said John B. Fogg, executor as aforesaid, to be disbursed by him according to said will and testament.

The material portions of the answer of Dorothy J. Dearborn are as follows :

That said funds were deposited in said bank, in the name and manner before set out, for the express purpose and with the legal effect of creating a trust therein by which the same should be held by said Hodgkins from the date of said deposit in trust for his own use during his lifetime, so far as the same might be necessary, and all that should remain undrawn at the decease of said Hodgkins, to be held in trust for said defendant absolutely. That at the decease of said Hodgkins, there remained undrawn in said bank, on said deposit, the sum of one thousand three

hundred twenty-two and thirty-three one hundredths dollars, which then and there under the terms of said trust became the absolute property of said Dorothy J. Dearborn.

That she is a sister of said Hodgkins, and, as she is informed and believes, said Hodgkins deposited said money in said bank, and had the book issued as above, for the use and benefit of said defendant, and with the full intention and purpose of transferring to her said funds and the absolute ownership and title thereto. That a few days prior to his decease, said Hodgkins delivered said bank book to John B. Fogg, the executor named in his last will and testament, with full and complete instructions to hold the same for, and to deliver the same to this defendant as her own goods and property, as he wished to give this defendant more than his other brothers and sisters.

That at the time of said delivery to said Fogg, said Hodgkins parted with all control over said bank book and the funds in said bank thereby represented, and then and there transferred said funds to this defendant and the absolute ownership therein, and title thereto, and that now and ever since said time, said property has belonged solely and exclusively to this defendant. That said Fogg, after the decease of said Hodgkins, and in accordance with his instructions, delivered said bank book to this defendant, and she now holds and claims by virtue of the gift aforesaid, to retain the same as her own proper goods and chattels.

That by virtue of the facts hereinbefore stated and by virtue of the gift of said moneys to her by said Hodgkins in his lifetime, this defendant now claims the same and denies the right, title and claim of said John B. Fogg as executor aforesaid, or of said estate to any part thereof.

The testimony discloses that a few days before Hodgkins died he sent for Fogg to come to the house of Mrs. Paul, where he was living. Fogg had been previously informed by him that he had been nominated executor of his will. For nearly a year Hodgkins had kept a portion of his valuables in a locked tin trunk, inside of a locked travelling-trunk at Fogg's house, going to it when he pleased.

Fogg, at this interview, carried the tin trunk to Hodgkins' bed. The book in controversy was not in this tin trunk but was in a wooden trunk in another room at Mrs. Paul's house, and neither the book nor the trunk was produced. On Fogg's arrival he sat up in bed took the tin trunk and called on Mrs. Paul for the key. He then unlocked it and said, "I am going to deliver you this property. There is quite an amount of it, quite a large amount, there are thousands here." He then delivered to Fogg the tin trunk with the key containing all his valuables except the book in dispute. He stated that he had another book in the house that was for his sister, the defendant, and requested Fogg to deliver it to her after his death. He had sent for Mrs. Dearborn to come and visit him, and he expected to be able to deliver her the book himself. He had previously expressed his intention to Fogg to give her more than the others. Fogg received the tin trunk and key, but did not find the book in question in it. He found it after the testator's death in the wooden trunk at Mrs. Paul's and delivered it to Mrs. Dearborn in accordance with his instructions.

Both parties claimed the funds and gave notice accordingly to the bank.

At the argument it was contended in behalf of Mrs. Dearborn, that the testator delivered the key of the wooden trunk to Fogg; while it was denied by the other defendant, who contended that it was returned to Mrs. Paul, who had his keys for several days previous to the testator's death, and that she kept them until called for by the executor.

No evidence was offered to prove that Mrs. Dearborn ever had any knowledge or notice of the fact of the deposit until after the testator's death.

*Heath and Tuell,* for John B. Fogg, Exr.

That Hodgkins retained dominion and control of the funds during his lifetime is fatal to his sister's claim that an equitable title passed to her. Aside from the terms of the entry there is no evidence to prove the terms of the trust. *Nutt* v. *Morse,* 142 Mass. 1. Notice to the *cestui que trust* is essential, if the depositor retains the deposit book and there is no delivery to a

third party for the *cestui que trust.* *Barker* v. *Frye,* 75 Maine, 29; *Northrop* v. *Hale,* 73 Id. 66; *Smith* v. *Savings Bank,* 64 N. H. 231; *Marcy* v. *Amazeen,* 61 N. H. 131; S. C. 60 Am. Rep. 320; *Bartlett* v. *Remington,* 59 N. H. 364; *Geary* v. *Page,* 9 Bosw. 290; *Blasdell* v. *Locke,* 52 N. H. 238; *Kerrigan* v. *Rautigan,* 43 Conn. 17; *Stone* v. *Bishop,* 4 Cliff. 593; *Sherman* v. *Bank,* 138 Mass. 581; *Scott* v. *Bank,* 140 Mass. 157; *Jewett* v. *Shattuck,* 124 Mass. 590; *Clark* v. *Clark,* 108 Mass. 522; *Burton* v. *Bank,* 52 Conn. 398; S. C. 52 Am. Rep. 602; *Brabrook* v. *Bank,* 104 Mass. 228; *Parcher* v. *Saco & B. Sav. Inst.,* 78 Maine, 470; *Robinson* v. *Ring,* 72 Id. 140; *Taylor* v. *Henry,* 48 Md. 530; S. C. 30 Am. Rep. 486; *Pope* v. *Bank,* 56 Vt. 284; S. C. 48 Am. Rep. 781; *Eastman* v. *Bank,* 136 Mass. 208. These cases hold that such deposit indicates nothing more than a possible intention to give. The beneficiary must have a present right to reduce to possession. *Basket* v. *Hassell,* 107 U. S. 602; S. C. 108 U. S. 267. A gift to take effect *in futuro* is nothing but a promise without consideration and invalid. *Barker* v. *Frye, supra,* in form of entry and notice differs from pending case. Cases where notice was given and acceptance proved: *Minor* v. *Rogers,* 40 Conn. 512; *Ray* v. *Simmons,* 11 R. I. 266; S. C. 23 Am. Rep. 477; *Gerrish* v. *New Bedford Sav. Inst.,* 128 Mass. 159; *Alger* v. *Bank,* 146 Mass. 418; *Eastman* v. *Bank,* 136 Mass. 208. All the N. E. courts hold that the mere fact that A. deposited in his own name for B. is insufficient; a deposit by A. in the name of B. of itself does not create a trust; such entries indicate no more than an intention to give; the title, legal or equitable, must pass during the life of the donor; and in the absence of delivery of any kind, notice to the beneficiary is essential, as the equivalent of delivery.

*Martin* v. *Funk,* 75 N. Y. 134; S. C. Am. Rep. 446, is practically overruled in *Young* v. *Young,* 80 N. Y. p. 422; S. C. 36 Am. Rep. 634.

Assuming a gift was intended, there was no act save the form of entry. Such entry alone is not a gift. Hodgkins' request was to deliver "at his decease." Until death the gift was revocable, and of no avail. Such request or direction was testamentary and void. *Sherman* v. *Bank,* 138 Mass. 581; *Curry* v. *Powers,*

70 N. Y. 212; S. C. 26 Am. Rep. 577; *Nutt* v. *Morse*, 142 Mass. 1; *Newton* v. *Snyder*, 44 Ark. 42; S. C. 51 Am. Rep. 587; *McCord* v. *McCord*, 77 Mo. 166; S. C. 46 Am. Rep. 9; *Wilcox* v. *Matterson*, 53 Wis. 23; S. C. 41 Am. Rep. 312; *Case* v. *Dennison*, 9 R. I. 88; S. C. 11 Am. Rep. 222; *Dunbar* v. *Dunbar*, 80 Maine, 152; *Drew* v. *Hayerty*, 81 Id. 231. This deposit was made "Dorothy J. Dearborn or Amos C. Hodgkins" to avoid the rule limiting deposits at $2000. The $40 dividends declared on the book from which they were transferred are two per cent on $2000. Equity does not perfect imperfect gifts.

*Baker, Baker and Cornish,* for Dorothy J. Dearborn.

Delivery to Fogg was as valid as if to Mrs. Dearborn herself. Delivery to a third person to hold as agent for the donee is valid. *Kilby* v. *Goodwin*, 2 Del. Ch. 61; *Clough* v. *Clough*, 117 Mass. 83; *Turner* v. *Esterbrook*, 129 Mass. 425; *Hill* v. *Stevenson*, 63 Maine, 364.

It may be said that Hodgkins might have sent for the Dearborn book and delivered that. True, but when, having neither the book nor the wooden trunk that contained it, in his immediate possession, but having the key that controlled it, he passed that key and therefore all control over the book with it to Fogg together with the instructions to give it to Mrs. Dearborn, his own possession both actual and constructive ceased, and the delivery was complete.

As examples of constructive delivery we would cite the following:

Delivery of a key of a warehouse in which furniture donated was locked, was held to be a good delivery of the furniture. *Smith* v. *Smith*, 2 Str. 955. Delivery of the key of a locked room in which was an unlocked trunk containing securities was held a good delivery of the securities. *Penfield* v. *Thayer*, 2 E. D. Smith, 305.

And also the delivery of the key of a trunk was held to be a valid delivery of the trunk and its contents in the old case of *Jones* v. *Libby*, Prec. Chan. 300.

In *Hatch* v. *Atkinson*, 56 Maine, 324, the gift claimed was a *donatio causâ mortis*, and as Judge WALTON remarks (p. 376)

such a claim is always viewed with suspicion, a doctrine restated in *Drew* v. *Hagerty*, 81 Maine, 231. That claim does not arise here.

In the second place, there is a strong flavor of fraud throughout that whole case. The court say that the testimony of the alleged donee was so at variance with her conduct and declarations that it was not to be credited. The evidence here comes from witnesses untainted with even a suspicion of fraud, in fact summoned by the other side.

The donee, in that case, had the trunk before him and had the valuables in his hand, and delivered neither trunk nor valuables to the plaintiff, but on the contrary directed that it be placed in the clothes press of his own room where it remained till his decease, under his immediate dominion and control, and clearly in the possession of the donor. There the securities and money the donor had in his very hands and could have delivered them. Here the bank book was locked in a trunk in another room in the house, and the delivery of the key was as good and perfect as the nature of the case would require; moreover in that case the trunk was kept after the alleged gift in the donor's closet, under his very eyes and almost within reach. Here it was in another part of the house, and he neither had dominion nor control over it after delivering the key to Fogg, nor did he attempt to have.

The Hatch case is by no means conclusive of our rights; we admit that the rule of law is that unless the donor completely divests himself of all power or control over the article, if he retains any custody or exercises any acts of dominion over it the delivery of a key will not be a sufficient delivery to perfect the gift; but we claim that the facts here, square up to that rule. In *Coleman* v. *Parker*, 114 Mass. 30, it was held that taking the key of a trunk from the place where it is kept, and putting goods into the trunk and returning the key to its place at the request of the owner in his last sickness, apprehending death and expressing the desire to make a gift of the trunk and contents *causâ mortis*, is not a delivery sufficient for that purpose.

The ground on which the decision was made was that there had been no such change in the possession of the key as would

constitute an effectual delivery of the trunk, but the court in their opinion say:

"We have no doubt that a trunk with its contents might be effectually given and delivered, in such a case" (when inconvenient or impracticable) "by a delivery of the key, not as a symbolical delivery of the property, but as a means of taking possession. If the key in this case had been placed in the hands of the witness, the donor relinquishing all dominion and control over it, and parting with it absolutely, or if by direction of the donor the witness had taken it into her possession and exclusive control, there would have been a sufficient delivery to make out a full title in the plaintiff."

The delivery, there supposed, in this case actually took place.

*Mr. Heath,* in reply.

There is no dispute about the directions Fogg received from Hodgkins. He was not to deliver the book to Mrs. Dearborn until after Hodgkins' death. Where property is delivered to a third person by the donor with authority to deliver it to the donee, such custodian is and continues the donor's agent until delivery to the donee has been consummated according to the directions; in the meantime the donor may revoke the gift. The property continues that of the donor until the order is complied with. Such agency terminates by death. It lacks the essential element of parting with dominion. *Allen* v. *Polereczky,* 31 Maine, 338; *Phipps* v. *Hope,* 16 Ohio St. 586; *People* v. *Johnson,* 14 Ill. 342; *Picot* v. *Sanderson,* 1 Dev. (N. C.) 309; *Craig* v. *Kittredge,* 46 N. H. 57 and cases cited.

Counsel also cited to the question of delivery:—

*Carleton* v. *Lovejoy,* 54 Maine, 446; *Dresser* v. *Dresser,* 46 Id. 48; *McGrath* v. *Reynolds,* 116 Mass. 566; *French* v. *Raymond,* 39 Vt. 623; *Camp's Appeal,* 36 Conn. 88; S. C. 4 Am. Rep. 39; *Headley* v. *Kirby,* 18 Pa. St. 326; *Powell* v. *Helicar,* 26 Beav. 261; *Bunn* v. *Markham,* 7 Taunt. 224.

HASKELL, J. Bill of interpleader sent up on report to determine the title to a deposit in the Augusta Savings Bank.

It appears that one Hodgkins, now dead, in his lifetime made

the deposit in account with Dorothy J. Dearborn, the claimant, or Amos C. Hodgkins, himself; that the deposit was made with the intention that, at his death, it should become the property of the claimant; that the book was not delivered to her until after his decease; that, until his death, it remained in a trunk in Mrs. Paul's house, where he lived and died, and then was taken by his executor and delivered to the claimant, pursuant to the testator's direction; that a few days before his death, conscious that his end was near, he called the executor, delivered to him a tin trunk, with directions as to the contents, and the key to the trunk in which the bank book was kept, with directions to give it to his sister after his decease; that his sister, the claimant, did not know of the intended gift to her during his lifetime, nor did the executor, when he received the key to the trunk that contained the book, know that the book was in it; he did not ascertain that fact until after the testator's death.

The learned counsellors for the claimant set up her claim, "not by reason of any trust, nor of a *donatio causâ mortis*, but of a valid gift *inter vivos*."

The evidence shows an intention to give, but not during life. The gift would have been complete upon the delivery of the bank book. The testator retained the possession of it beyond all question, until a few days before he died. He then delivered the key of a trunk containing the book, not to the claimant, nor to any person to be forthwith delivered to her, but to the executor named in his will, for her, "at his decease." Had he recovered, would the title of the deposit have gone from him? Was the gift complete in his lifetime?

By giving the evidence the most favorable consideration, of which it is susceptible, in the claimant's favor, she was only entitled to receive the bank book upon the contingency of the supposed donor's decease. The end of his life was made a condition precedent to a complete transfer of the deposit to the supposed donee. Even, if the substituted delivery of the key to the trunk could take the place of an actual delivery of the bank book, which is stoutly denied, no gift *inter vivos* is shown. A gift of that sort must be complete between the living. It cannot be con-

summated after the death of a supposed donor. Such a disposition would be inoperative under the statute of wills. *Donatio perficitur possessione accipientis.*

The authorities have been so diligently collected and thoroughly discussed by counsel, that it is unnecessary to cite them anew.

The bank should be allowed its costs from the deposit, and, on payment of the balance to the executor, should be discharged from all liability to both parties on account thereof. No further costs to be allowed.

*Decree accordingly.*

PETERS, C. J., WALTON, VIRGIN, EMERY and FOSTER, JJ., concurred.