## WRIGHT v. BRAGG.

(Circuit Court of Appeals, Seventh Circuit. January 15, 1901.)

### No. 702.

1. GIFT—EVIDENCE OF DELIVERY.

The owner of a note and mortgage executed an assignment of the same, and placed it, together with the note and mortgage, in the hands of a third person, who placed them in an envelope and made an indorsement thereon to the effect that they were to be delivered to the assignee or his heirs in case of the death of the assignor. Held, in a suit brought after the death of the assignor, assignee, and the custodian, that such indorsement was not admissible as evidence tending to show a delivery of the note and mortgage to the assignee, for the purpose of establishing a gift; there being no evidence showing when the indorsement was made, or whether with the knowledge or assent of the assignor.

2. SAME.

A gift of a note and mortgage is not established by evidence showing the execution of an assignment thereof by the payee, which, with the note and mortgage, was placed in the hands of a person who was acting

as agent for the assignor, to be delivered to the assignee or his heirs on the assignor's death, where it is shown that the assignee had no knowledge of the transaction and no business relations with the custodian of the papers, and where interest paid on the note a year later was credited thereon by the custodian as agent for the assignor, and remitted to her at her request, and she subsequently took the note and mortgage from his possession and made a will bequeathing them to another, although the assignment itself remained in the hands of the custodian, and was by him delivered to the administrator of the assignee after the assignor's death. Such evidence falls short of proving the essential fact of a delivery, which passed a present title to the intended donee.

3. SAME.

Whether in such case the placing of the assignment in the possession of the custodian effected a completed gift depends upon whether or not the assignor then intended to part with control over the instrument, and such intention is provable only, in the absence of direct evidence, by circumstances connected with that act. Facts and circumstances or statements of intention made at other times are inadmissible to prove such intent, where they are equally consistent with an intention that the instrument should remain under her control during her life, and should not be delivered until after her death.

4. SAME—BURDEN OF PROOF.

Where the question at issue was as to the validity of a gift of a note and mortgage to the plaintiff, which depended upon whether or not there had been a delivery during the life of the donor, an instruction that the introduction in evidence by plaintiff of a duly-executed assignment of such note and mortgage from the donor to him shifted the burden of proof as to delivery to defendant was erroneous, where it was conceded that the assignment did not come into possession of plaintiff until after the death of the assignor.

Grosscup, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

See 96 Fed. 729.

This is a contest over the title to a certain note and real estate mortgage for $5,000 made by Abram A. Ver Brych, payable to Eliza O. Farnsworth, and dated 30th October, 1894. The plaintiff in error claims title under a will made by Eliza O. Farnsworth, the owner of the mortgage, dated November 10, 1895, which in terms bequeaths the same to her. The defendant in error claims title by virtue of an assignment in writing of the note and mortgage made by Mrs. Farnsworth in her lifetime to James H. Farnsworth, since deceased, and whom the defendant represents as administrator, and dated on November 17, 1894. The facts are substantially these: Eliza O. Farnsworth, being the owner of the $5,000 note and mortgage in question, signed and acknowledged the execution of what purported to be an assignment of the same to James H. Farnsworth, of Seattle, Wash., for the consideration of $5,000. At some time (just when does not appear) Mrs. Farnsworth deposited this instrument with James T. Green, of Fond du Lac, Wis., who then and until her death was her agent, attending to various matters of business for her. Both Green and Mrs. Farnsworth died before this action was commenced, so that the evidence as to when and how the note, mortgage, and assignment were left with Green is not clear or satisfactory. This appears, however: That Green placed the assignment in an envelope, near the top of which he indorsed the date of the instrument, and further down the name of Mrs. Farnsworth, followed by these words, apparently in pencil: "Left with James T. Green. In case of death, to be delivered to Jas. H. Farnsworth or his heirs." This envelope, containing these papers only (that is, the note, mortgage, and assignment), he placed unsealed in a large envelope containing other papers belonging to Mrs. Farnsworth, which he placed in a box, which box he kept in his safe, where these papers remained until the death of Mrs. Farnsworth on November 15, 1895. On October 22, 1895,

but a few days before her death, there was paid on the note $250, interest for one year to October 30, 1895, which Green credited upon the note as attorney for Mrs. Farnsworth, the indorsement being signed, "Eliza O. Farnsworth, per J. T. Green." On November 19, 1894, Mrs. Farnsworth, then a resident of Fond du Lac, went to Georgia, whence she returned in April, 1895. In October, 1895, she visited Mrs. Delia De Neveu, of Green Bay, where she remained until her death in November. Early in November, 1895, Mrs. De Neveu, at the request of Mrs. Farnsworth, wrote to Green, at Fond du Lac, to send her any money he might have on hand belonging to Mrs. Farnsworth; and he remitted to her $300, which presumptively included the interest received by Green upon this note. On November 10, 1895, Mrs. Farnsworth executed and delivered to P. B. Haber an order upon Green to deliver to him the note in question, and all other papers, securities, and moneys in his possession belonging to her. On the same day she made her will, which was introduced in evidence, whereby she bequeathed the $5,000 note and mortgage to Ella Wright, the plaintiff in error, and expressly canceling and revoking any assignment thereof. After her death, on November 15th, the will was admitted to probate, and no question has been made of its validity. When Haber presented the order above mentioned, Green delivered him the note and mortgage, with other papers belonging to Mrs. Farnsworth, but not the assignment to Farnsworth, which after Green's death came into the hands of the attorney for defendant in error.

Denis F. Cash, for plaintiff in error.

Edward S. Bragg, for defendant in error.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

Upon the above statement of facts BUNN, District Judge, delivered the opinion of the court.

There are many assignments of error, not all of which will it be necessary to notice. Although the assignment of the note and mortgage to Farnsworth recites a consideration of $5,000, the record shows that it was made without consideration, and without the knowledge of James H. Farnsworth, the assignee named, who was a brother of Mrs. Farnsworth's husband, who had previously died. On the contrary, the record and briefs show that the defendant in error is claiming title by virtue of the assignment as a gift inter vivos to James H. Farnsworth from Eliza O. Farnsworth, and the questions in the case all relate in different forms to the validity of the transfer as a gift. On the trial the court admitted in evidence, against the objection of the plaintiff in error, the envelope with the indorsement made in Green's handwriting, as tending to show a delivery of the note and mortgage; and the jury were instructed by the court to consider it as evidence, provided they found the indorsement was made at the time of the execution of the assignment, so as to make it a part of the res gestæ. The difficulty with this proposition is that there is nothing to show or tending to show when the indorsement was made,—whether by Green with Mrs. Farnsworth's knowledge at the time of the execution of the assignment, or by Green afterwards without the knowledge of Mrs. Farnsworth. We think, therefore, the admission of the indorsement as evidence of delivery, and the instructions of the court to so consider it, was error. It was incumbent on the defendant in error—the burden was upon him—to show an actual delivery to James H.

Farnsworth, or to some one for him, of the instrument under which he now seeks to hold, so as to devest the grantor of all control over the property. There were no circumstances from which the jury could have the right to infer a delivery from the indorsement so admitted in evidence. There was nothing in the case to indicate in any way to the jury when the indorsement was made, and whether with or without the knowledge or consent of the grantor in the assignment.

But, assuming that the evidence was properly admitted, what does it prove? How far does it go towards making a case? The difficulty in the case is that, giving the largest possible effect to the evidence, it does not show a delivery of the note, mortgage, and assignment, or either of them, to the supposed donee. The most it would show is that the papers were deposited with the grantor's agent, to be by him delivered to the grantee in case of her death; and this was not a good and complete delivery, in law, to pass the title. There was in fact no delivery at all to the donee. There is no evidence that he knew anything about the transaction. There was no delivery to any one representing the donee or in his confidence. The evidence, treated as competent, shows that it was left with Green to be delivered to the donee upon the donor's death. Green was her agent, and the assignment, with the note and mortgage, was still under her control. Her agent's custody was her custody. And, therefore, there was no more a delivery to the donee than as though she had kept the papers in her own personal possession. The authorities on this question are quite uniform and satisfactory. A gift inter vivos, to be valid, must take effect at once, and there must be nothing to be done essential to the validity; and, if it is to take effect in the future, there is no gift, but only a promise to give. So a gift to take effect at the death of the donor is void. Thornt. Gifts, § 7c. In other words, to constitute such a gift, there must be an immediate transfer of the title, and the donor must relinquish all present right to or control over the thing given. Zeller v. Jordan, 105 Cal. 143, 38 Pac. 640; Hale v. Joslin, 134 Mass. 310. In this last case it was held that where a person executes a deed of land, and places it in the hands of A., with directions to keep it during the grantor's life, and on his death to deliver it to the grantee, A. holds it as agent of the grantor, and not as agent of the grantee, and the grantor may revoke it at any time. The remarks of the court in disposing of the case are quite applicable to the case at bar. It says:

"We think the evidence shows that Elijah Hale did not intend that the deed should be delivered until his death. He did not intend that the plaintiff should have any interest in the land, but intended to keep in himself the dominion and control of it. It was in the hands of Whitney as a depositary for the grantor, and not as agent or trustee for the grantee."

The same principle has been adjudged in many cases.

In Williams v. Schatz, 42 Ohio St. 47, there was a direction to one Dr. Blake, given by the grantor, then sick, that if he died the doctor should deliver the deed of gift to the grantee. The grantor died, and the deed was delivered and recorded according to his direc-

tions after his death. But the court held that there was not a valid delivery, and hence the instrument never took effect. The transfer was in the nature of a testamentary disposition, and as such not valid. Dr. Blake was the agent of the grantor, and not the grantee, and hence the instrument was not only revocable by the grantor at any time before his death, but, not having parted with all dominion over it during life, it became on his death a mere nullity. The same doctrine is held by the supreme court of Maine in Allen v. Polereczky, 31 Me. 338. The gift in that case also was to take effect only upon the death of the donor, and the court say:

"According to the testimony, the gift was to become the property of the donee absolutely only in case of death of the donor. It cannot, therefore, be sustained as a valid gift inter vivos."

See, also, Bank v. Fogg, 82 Me. 538, 20 Atl. 92, where the same doctrine is affirmed.

In Tygard v. McComb, 54 Mo. App. 85, the court say:

"A gift inter vivos is a parting with the title of personal property in praesenti, absolutely and irrevocably. As said by Chancellor Kent, 'Gifts inter vivos have no reference to the future, and go into immediate and absolute effect.' In order to constitute a valid gift, there must be a complete and irrevocable transmutation of title and possession, perfect in all things, at the time the gift is made, dependent on no circumstances or condition in the future. 1 Pars. Cont. 234. There must be a complete delivery of the thing given,—such a delivery of possession as works an immediate change of dominion over the property. Gartside v. Pahlman, 45 Mo. App. 160, and cases cited. There must be an absolute and unequivocal intention by the donor to pass the title and possession at once over to the donee. To constitute a valid gift, it will not do to have it go into effect on the happening of some event in the future, or at the death of the donor. In the latter case the gift would be testamentary in character, and would violate the wise provisions of the statute of wills."

See, also, to the same effect, Sterling v. Wilkinson, 83 Va. 791, 3 S. E. 533; Dickeschied v. Bank, 28 W. Va. 340; Prutsman v. Baker, 30 Wis. 644; Williams v. Daubner, 103 Wis. 521, 79 N. W. 748.

The cases cited to the contrary are not essentially in conflict. In Stout v. Rayl, 146 Ind. 379, 45 N. E. 515, the grantor, in regular form, signed and acknowledged the execution of the deed in question, and at the same time another deed, and, after the indorsement on each of the words, "After my death, this deed to be delivered by B. F. Wells," who was not the grantee in either, handed each to his wife, saying at the time: "Take it and keep it in a safe place until my death. Then deliver it to B. F. Wells." The deeds were at the same time put into an envelope and sealed up, and the envelope indorsed, "Deeds to be delivered by B. F. Wells after my death." The deeds so sealed up were kept in a locked drawer, the grantor exercising no control over and never calling for them; and after his death Wells, in pursuance of instructions theretofore given him by the grantor, called for and received the deeds, caused them to be recorded, and thereafter delivered each to the grantee, who accepted the same and went into possession of the property. These facts, of course, justified the finding that the grantor had delivered

the deed in question with the intention to part with all control over the instrument, and on that theory the judgment of the lower court was affirmed.

In Foster v. Mansfield, 3 Metc. (Mass.) 412, there was ample evidence, in the declarations of the grantor at the time of the preparation and execution of the deed, to show a present transfer of the title by force of a delivery to one who was to hold for the grantee until after the death of the grantor. It is to be observed, however, that in the opinion of the court it was said:

"It is immaterial to inquire what would have been the effect if the grantor had recovered from his sickness and taken back the deed. As the estate did not effectually pass till the second delivery, if that second delivery had been prevented it would probably have been held that it was wholly inoperative."

In Moore v. Hazleton, 9 Allen, 102, one Chamberlain, a guardian, who had become insolvent, "intending to set apart and apply a portion of his own general assets in part payment of what was due to the plaintiff, the ward; and to be his property, and to be held in trust as a part of the fund which Chamberlain had originally received, belonging to the plaintiff, by proper deeds of assignment, duly executed and assigned, for the purpose aforesaid, to the plaintiff, five recorded mortgages of real estate, and the promissory notes secured thereby." The mortgages, notes, and the assignments he retained in his possession for nearly two years, when, after the appointment of an assignee of his estate in insolvency proceedings, he caused the assignments to be recorded in the registry of deeds "for the purpose and with the intent aforesaid"; and the plaintiff, upon then learning thereof, "assented to the assignments so made to him." The validity of these assignments, as the opinion in the case clearly shows, could hardly have been disputed, independently of any question of delivery. The guardian's "power and duty to separate the ward's property from his own, or to make good any part of it which he had lost or wasted," says the opinion, "was the same after the ward had become of age as it had been during his minority. * * * The assignments executed * * * do not stand upon the footing of voluntary assignments. * * * As the title to the ward's estate was in him, and not in the guardian, the evidence of the trust in the securities in question would properly be in the form which was actually adopted, of an assignment to the ward himself, rather than a declaration of the trust upon which the guardian should continue to hold it for the ward's benefit. * * * He would naturally keep these assignments, like other property of the ward, until he should account for them in the probate court. His retaining possession of the instruments of assignment was, therefore, in perfect accordance with the nature of his trust." Further than this it was plainly unnecessary to go, though it is doubtless true, as the court proceeded to say, that "when an instrument of conveyance is sealed and delivered, with an intention on the part of the grantor that it should operate immediately, and there is nothing to qualify the delivery but keeping the deed in the hands of the grantor, it is a valid and effectual deed, in law and equity"; but for the remainder of the proposition, "and

execution of the deed in the presence of an attesting witness is sufficient evidence from which to infer a delivery," so broadly as stated, we have been able to find no justification in the cases cited, and cannot think it sound in principle. It is equivalent to saying that a deed formally executed and witnessed, but never out of the possession and manual control of the grantor, may be presumed to have been delivered. Where in addition there is proof of a contract, duty, or trust which the grantor intended to perform, the conclusion may follow; but not legitimately, as we conceive, when there is no consideration, and the transaction is, or would be if carried out, purely voluntary.

The exact point of dispute is whether Mrs. Farnsworth, when she placed or left the assignment in the possession of Green, intended then and thereby to part with control over the instrument. Upon that point the burden of proof was with the plaintiff, the defendant in error. It was a question not of general but of specific intention, connected with the act of depositing the assignment with Green, and provable, in the absence of direct or positive evidence, only by circumstances connected with that act. If the intention was that the assignment should be delivered to the assignee after her death, if meanwhile she should not direct otherwise, then, confessedly, the instrument was not delivered; but such an intention would be in entire harmony with the terms of the instrument, with the fact that the property represented in the note came from her husband, by whom she had no children, that the assignee was her husband's favorite brother and was in need, and that she had said to and in the hearing of witnesses that he might be better off after her death. None of these or of like circumstances tended to show that at the time of signing, acknowledging, and placing the instrument in Green's possession she intended to deprive herself of the right to change her purpose, and the court erred in permitting the jury to consider them as bearing upon that question. They tended, at most, to show Mrs. Farnsworth's motive,—a motive, however, just as consistent with her continued control over the instrument as with an intention to make an immediate and absolute delivery. It is equally clear that the circumstances mentioned afford no proof whatever that the indorsements in the handwriting of Green upon the envelope in which the note, mortgage, and assignment were kept were placed there simultaneously and at the time when the assignment was subscribed by Mrs. Farnsworth, or at any time by her direction or with her knowledge. The indorsements were therefore improperly admitted in evidence.

The court also erred in instructing the jury that upon the introduction in evidence of the assignment, duly acknowledged and attested, the burden of proof in respect to delivery shifted to the defendant. Technically speaking, the burden of proof does not shift, though the necessity for further evidence may often shift from one side to the other. Powers v. Russell, 13 Pick. 69; Fay v. Burditt, 81 Ind. 433. The error was material in this case, because it was beyond question that the plaintiff did not acquire possession of the assignment until after Mrs. Farnsworth's death, so that the plaintiff's

possession and ability to offer it in evidence were of no significance whatever upon the question of delivery.

The plaintiff in error offered to prove on the trial the declaration of Green, a few days after the death of Mrs. Farnsworth, to the effect that he recognized her right to have the papers at any time she should call upon him for them. This evidence was objected to, and, as we think, properly rejected. But the same inference is clearly deducible from the relations between Mrs. Farnsworth and Green, as shown by the undisputed testimony. He was her agent and depositary, and while the papers were in his custody she had control of them.

The doctrine applicable to a case like this was, we think, clearly laid down by the United States supreme court in Basket v. Hassell, 107 U. S. 602, 2 Sup. Ct. 415, 27 L. Ed. 500, where the court, by Mr. Justice Matthews, said:

"The point which is made clear by this review of the decisions on the subject is, as we think, that the instrument or document must be the evidence of a subsisting obligation, and be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to devest the donor of all present control and dominion over it, absolutely and irrevocably, in case of a gift inter vivos, but upon the recognized conditions subsequent in case of a gift mortis causa, and that a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation according to its terms will not suffice. A delivery, in terms, which confers upon the donee power to control the fund only after the death of the donor, when by the instrument itself it is presently payable, is testamentary in character, and not good as a gift."

After the evidence was in, the defendant's counsel requested an instruction to find a verdict for the defendant, which request was refused, and exception duly taken. We are of opinion that the instruction so asked should have been given, and that the evidence is not sufficient to warrant a verdict for the plaintiff below. The judgment is reversed, and the cause remanded, with instructions to grant a new trial.

GROSSCUP, Circuit Judge, dissenting:

Had the majority opinion confined the reversal to the alleged error respecting the burden of proof, and its supposed shift from the plaintiff below to the defendant below, I might have been able to concur. But the effect of the opinion is to dispose of the case finally, not for this error; but because there is no sufficient proof justifying a verdict for the plaintiff below. This compels me to dissent.

The law applicable to this case, as I conceive it, is expressed by Shaw, Chief Justice, in Foster v. Mansfield, 3 Metc. (Mass.) 414, as follows: "Whether, when a deed is executed, and not immediately delivered to the grantee, but handed to a stranger, to be delivered to the grantee at a future time, it is to be considered as the deed of the grantor presently, or as an escrow, is often matter of some doubt; and it will generally depend rather on the words used and the purposes expressed, than upon the name which the parties give to the instrument. Where the future delivery is to depend upon the payment of money, or the performance of some other condition, it will be deemed an escrow. Where it is merely to await the lapse of time, or the happening of some contingency, and not the performance of any condi-

tion, it will be deemed the grantor's deed presently"; and by the Supreme Court of Indiana in Stout v. Rayl, 45 N. E. 517, as follows: "An eminent author correctly and clearly states the law thus: 'Where a grantor executes a deed, and delivers it to a third person, to hold until the death of the grantor, the latter parting with all dominion over it, and reserving no right to recall the deed or alter its provisions, it seems to be settled by the weight of authority that the delivery is effectual, and the grantee, on the death of the grantor, succeeds to the title. A delivery of this kind may be considered, in effect, an escrow, but differs from that in the fact that a delivery in escrow is dependent upon the performance of some event, and not upon the lapse of time'"; and again by the Supreme Court of Massachusetts, through Gray, Chief Justice, in Moore v. Hazleton, 9 Allen, 106, as follows: "When an instrument of conveyance is sealed and delivered, with an intention on the part of the grantor that it should operate immediately, and there is nothing to qualify the delivery but keeping the deed in the hands of the grantor, it is a valid and effectual deed, in law and equity; and execution of the deed in the presence of an attesting witness is sufficient evidence from which to infer a delivery."

It will thus be seen that the question is one purely of intention; and intention is the state of mind with which an act is performed. What was Mrs. Farnsworth's state of mind with respect to the assignment? If it was that the note and mortgage should become, presently, the property of the assignee, she had no power thereafter to recall it, whatever might have been her change of mind. If otherwise, the assignment could not take effect, except as a testamentary devise.

This question of intention—her state of mind at the time the act was performed—is one of fact, and is to be solved, like other questions of fact, not provable by direct testimony, by resort to every character of circumstance that fairly and reasonably aids in disclosing what her mind, at the time, was. At the time the action was brought the assignor was dead, the assignee was dead, and the intermediary was dead. No one was left to speak, directly, out of the memory that clothed the transactions. Resort was necessarily had to circumstances—the only witness left to point out the way to the truth.

These may be marshalled in favor of the plaintiff below as follows:

The fact that the assignment was not contingent, but was absolute in its terms to the assignee, his heirs, executors, and assigns; the fact that the deposit of the assignment was not disturbed by Mrs. Farnsworth after her return from the south in April, 1895, until the next October, although during that period she lived within a block and a half of Green's office; the fact that the assignment was enclosed in an envelope separate from the other papers in the possession of Green; the fact that this envelope contained an endorsement to the effect that it was to be delivered, in case of Mrs. Farnsworth's death, to James H. Farnsworth, or his heirs; the fact that Mrs. Farnsworth and her deceased husband were without children, she being possessed of property in her own right, the note and

mortgage having been his separate property; the fact that the assignee was Mrs. Farnsworth's husband's favorite brother, and that this assignment was essential to carry the property to him, otherwise it would go to her next of kin; the fact that, previous to the assignment, statements were made by her to the effect that, after her death, this brother would be better off; and the fact that the assignment was handed by Green, while living, not to the beneficiaries under the Will, but to the representative of James H. Farnsworth.

On behalf of the defendant below, the circumstances proven may be marshalled as follows:

That the assignment was not immediately delivered into the hands of the assignee who was then living; that Green was Mrs. Farnsworth's agent in other business transactions, and had custody of some of her other papers; that in October, 1895, a few days before her death, there was paid in upon the note and mortgage the interest for the preceding year which was credited by Green, and in November following sent to Mrs. Farnsworth; that Mrs. Farnsworth, shortly before her death, made a will bequeathing the note and mortgage in question to others.

It seems clear to me, from this summary of circumstances pro and con, that there is a wide margin for honest differences as to the intent of Mrs. Farnsworth. It is to be noted that no interest fell due, or was paid in the interval between the assignment and the time when, just before her death, she asked that the interest be remitted to her. Her change of mind, under the influence of the people who finally became the beneficiaries of her Will, may account for this last request, and thus leave it without much evidential cogency respecting her state of mind at the time the assignment was deposited with Green. It is to be noted, too,—as bearing upon the fact that the assignment was not immediately delivered into the hands of the assignee—that the assignee resided at a great distance, and was in somewhat embarrassed financial circumstances. It frequently happens, as the reported cases abundantly show, that, for reasons known only to the giver, a gift inter vivos is made to take effect in the future.

We have here, then, as I think, the case of a formal assignment of the note and mortgage, perfected as a gift inter vivos, except as to the intent with which it was deposited with Green; and accompanied by all the accessible circumstances, some of them tending to show that the delivery was meant to be in præsenti, others that it was meant to be in the nature of a testamentary devise, but none of them, either separately or cumulatively, rising to the conclusiveness of a presumption of law, one way or the other. Such a question—the state of mind of a deceased person—dependent, as it is, for its solution upon footprints thus picked out from the pathways trod by these dead people, should, above all others, be submitted to the judgment of a jury. It is, at any rate, not fairly solvable, under the circumstances presented, as a matter of law.