CLEMENCE ELLS *et al.*, Respondents, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals. March 31, 1890.

1. **Deed:** RULE AS TO DELIVERY OF. The delivery of a deed is complete, when the grantor or obligor has parted with his dominion over it, with the intent that it shall pass to the grantee or obligee, provided the latter assents to it, either by himself or his agent.

2. ———: CONSTRUCTION: SPECIAL WORDS V. GENERAL WORDS: RULE. When a deed first speaks in general words, and afterwards in special words, and the latter accord with the former, this deed shall operate according to the special words, whether they enlarge or restrain the general words that precede; and where, as in this

case, a deed for a right of way described the grant as a hundred feet in width through, etc., a certain tract, including a dwelling house, and subsequent special words described it as fifty feet on the north, and fifty feet on the south, side of the center of the track of the railroad of the grantee, as the same may be finally located and constructed over said tract, etc., the special words authorize the appropriation of any other strip of the grantor's land upon which the grantee might finally change the location of its line.

*Appeal from the Moniteau Circuit Court.*—HON. E. L. EDWARDS, Judge.

AFFIRMED.

*Wm. S. Shirk*, for the appellants.

(1) The evidence wholly fails to show an acceptance of the deed by any one authorized to accept the same for the defendant. On the contrary, at the trial the plaintiffs were in possession of the same, produced the same, and offered it in evidence, but did not tender it to defendant. (2) At the trial plaintiffs claimed that the deed offered in evidence conveyed a right of way one hundred feet in width across any part of plaintiffs' lot; yet the deed conveys only a specific one hundred feet, upon which a dwelling house stands, and plaintiffs notified defendant that just whatever land that deed takes it could have, and no other. The plaintiffs' first instruction should not have been given. *First.* It was misleading, and against the evidence. It assumed as a fact that defendant had taken possession of the strip described in the deed and had held possession of the same up to the trial. Such was not the fact. See second subdivision of point 1. *Second.* It told the jury that they should find for the plaintiffs if the evidence showed merely that a verbal contract was made, and that in pursuance thereof the plaintiffs executed for the strip to the defendant, and that defendant took possession. It did not require the jury to find that the

deed was ever accepted by defendant, or any one else authorized so to do. Without showing an acceptance of the deed, plaintiff could not recover. See first subdivision of point 1. (3) The second instruction given for the plaintiff was grossly erroneous. It tells the jury that the deed read in evidence conveyed to the defendant a right of way over any part of the plaintiff's land, where defendant might choose to locate it. The latter clause did not operate to permit the defendant to entirely relocate its right of way across the lot at a different place, but only to make such slight changes as might become necessary in actually constructing the track. To give any other effect to this clause would be to permit the defendant to stake out a right of way across plaintiff's lot, down on the river bank, remote from the dwelling house, and procure from plaintiff a deed for the same, and afterwards relocate its right of way, so as to include the dwelling house on an entirely different strip. The specific description must prevail over the general.

*Cosgrove & Johnston*, for the respondent.

(1) It appears from the deed in evidence, executed and delivered by plaintiffs to the defendant that plaintiffs conveyed to the defendant a strip of ground one hundred feet in width across his land, "as the same may be finally located and constructed over said tract aforesaid and as it may pass through the lands and premises of the grantors herein." This deed was written by defendant's attorney, and the purpose of the foregoing clause was to give to the defendant the right to locate the line of its road anywhere it saw proper across said land, and the evidence shows this to have been the understanding of the plaintiff and defendant's attorney. (2) The evidence shows that the deed was delivered to defendant's agent, which certainly implies its acceptance. (3) "Where it appears that a party is general agent for another in all matters pertaining to a

particular business, special limitation upon his authority, which is unknown to a party dealing with him in such business, cannot be shown in evidence so as to affect the right of such party." *Bates v. Holiday*, 31 Mo. App. 162 ; *Summerville v. Railroad,* 62 Mo. 391 ; 100 Am. Dec. 78 ; 70 Am. Dec. 226 ; 72 Am. Dec. 757 ; 10 Am. State Reports, 585. The deed "provides for" the conveyance of a strip of ground one hundred feet in width "as the same may be finally located and constructed over said tract aforesaid and as may pass through the land and premises of the grantors herein." ( 4 ) When plaintiffs executed and delivered the deed to Stephens, it was done with the intent on their part that it should take effect as their deed in favor of the defendant. It was so held by said Stephens and after its delivery to him was beyond the control and right of the dominion of the plaintiffs. ( 5 ) Plaintiffs' second instruction was not erroneous. It interpreted the deed properly and in accordance with the language used by the draughtsman, who was the attorney and agent of the defendant. It is plain that it was the intention of Col. Crews, who wrote the deed, and the plaintiffs who signed it, that the railroad could take one hundred feet over any part of the plaintiffs' land where defendant might choose to locate it. At the time of executing this deed the railroad had not determined what part of the land it would take, but its attorney was shrewd enough to reserve the right to take one hundred feet wherever the defendant might finally locate and construct its track, and plaintiffs in said deed conveyed to the defendant one hundred feet of their ground with this understanding and intention.

SMITH, P. J.—Plaintiffs are husband and wife, living in the city of Boonville, Missouri, and, in the year 1886, the wife was the owner of a lot of ground, described in the petition. In or about the month of November, 1886, the defendant was contemplating the

construction of a railroad through Cooper county and over plaintiff's said land, and was represented by Col. T. W. B. Crews, its attorney and agent, who was, about the date aforesaid, engaged in securing, by gift, purchase or condemnation, rights of way for said contemplated railroad through Cooper county, including the city of Boonville. Col. Crews, as the authorized agent of defendant in procuring rights of way for said railroad, through said county, called upon plaintiffs in the month of November, 1886, and attempted to negotiate with them for the purchase of a right of way over said land. Not being able to agree as to the price, Col. Crews and Mr. Ells agreed to leave the matter to three men, who viewed the premises and fixed the price, but this having been done without any notice to plaintiffs, they objected, and then Col. Crews and plaintiffs agreed that each one should again choose one man and these two a third, who should fix a price for said right of way, by which plaintiffs and defendant should be bound. Three arbitrators were accordingly selected, who viewed the premises, and agreed upon the amount which defendant should pay plaintiffs therefor, which was five hundred dollars.

On the same day said arbitrators notified Col. Crews and the plaintiffs of their action. Col. Crews immediately prepared a deed to be executed by plaintiffs, and insisted upon its being signed, acknowledged and delivered at once, and, as he was about to leave town, he directed that it should be delivered to Speed Stephens, cashier of Central National Bank, and he (Crews) would attend to getting the money for plaintiffs. In accordance with this request, the plaintiffs executed the deed and deposited it with said Stephens. The deed describes the land conveyed as "strip of land, one hundred feet in width through, over and across a certain lot of ground, including a dwelling house thereon, situate in a certain township, section and range." There is a clause in the concluding part of the

deed which provides, that "the strip of land, hereby
conveyed, having an area of about three-fourths of an
acre, being one hundred feet in width, or fifty feet on
the north side, and fifty feet on the south side, of the
center of the track of the railroad of the party of the
second part, as the same *may be finally located and
constructed over* said tract aforesaid, and as it may pass
through the land and premises of the grantors herein."

About three months after the execution and deliv-
ery of the deed, and after plaintiffs had called at the
bank, of which Stephens was cashier, for their money, and
it had not been paid, Col. Crews sent one Joe Green to
plaintiffs to inform them that he did not want the right
of way described in the deed, and that they could go to
Stephens and get the deed. In the meantime, the rail-
road company had made a new survey over the said lot
of ground and taken possession thereof, and constructed
its railroad thereon, and, after doing so, had com-
menced proceedings to condemn said land which pro-
ceedings are still pending in the circuit court of Cooper
county. Plaintiffs, therefore, commenced this suit to
recover the sum of money for which they had sold their
property and executed a deed, and, in the court below,
obtained judgment for the sum sued for, from which
the defendant has appealed.

I.   The first question which the record presents, for
our decision, is, whether there was a delivery of the
deed, from the plaintiffs to the defendant. It is laid
down in 2 Greenleaf's Evidence, section 297, that "the
delivery of a deed is complete, when the grantor or
obligor has parted with his dominion over it, with the
intent that it shall pass to the grantee or obligee, pro-
vided the latter assents to it, either by himself or his
agent." In 3 Washburn on Real Property, 297, it is
said that "if a deed is delivered to one, who is author-
ized by another to receive it for him, or to one without
such previous authority, but authorized by the grantee

to retain it for him, it is held to constitute a delivery." In *Cook v. Brown*, 34 N. H. 460, it is said, "there must be a time when the grantor parts with his dominion over the deed, else it can never have been delivered. So long as it is in the hands of the depository, subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none.

In *Henry v. Henry*, 65 Mo. 689, it was said that the infallible test of a delivery is the fact, that the grantor has divested himself of all dominion and control over the conveyance. In *Hammerslough v. Cheatham*, 84 Mo. 13, it was said that, "to constitute a delivery of a deed, by placing it in the hands of a third party, it must be done with the intent, on the part of the grantor, that it should take effect, as his deed, in favor of the grantee. It must be so held, by the third party, as to be beyond the control and right of dominion of the grantor." There was nothing, in the circumstances of the delivery of the deed to Stephens, negativing the intention that it as the present deed of the plaintiffs, or as beginning to take effect presently, or in other words there was nothing to show that the putting the deed in Stephens' hands was an *escrow*.

A careful examination of the evidence has convinced us that the deed was unconditionally delivered to Stephens by the plaintiffs, at the instance and request of defendant's agent and attorney; that the plaintiffs parted with their dominion over the deed, and that, by the delivery, it took effect and became operative as a conveyance of the land it described. It seems to us, that the depositing of the deed with Stephens, by the plaintiffs at the request of defendant, constituted a delivery to, and an acceptance of it. And this view finds support in other facts, that we shall presently advert to.

II. Even if the deed, in question, was delivered and accepted, the ultimate rights of the parties to this

suit, it is suggested, are largely dependent upon what the words therein employed shall be interpreted to mean.

This instrument granted to the defendant a right of way, or easement, over the land of the grantor. The grant was for "a strip of land one hundred feet in width, through, over and across the lot including a dwelling house." The dwelling house was within the one hundred feet strip, upon which the defendant's roadway had been located. But in case there should be a change of location of the line of defendant's road, on the plaintiff's said tract of land, the granting part of said deed was broadened by the special clause following it, which we have already transcribed into the statement of the case, so as to authorize the appropriation, by defendant, of any other strip of the plaintiff's land, upon which it might finally change the location of its line. The rule is, that " when a deed first speaks in general words, and afterwards in special words, and the latter accord with the former, this deed shall operate according to the special words, whether they enlarge or restrain the general words that precede.". 3 Wash. Real Prop. 437.

It seems that the very terms of this special clause imply that the plaintiff had granted to the defendant a strip of land of certain width and area, the location of which was to be determined by the final location and construction of defendant's railway through plaintiff's land. The grant in the deed, then, authorized the final location and construction of the defendant's road, within the restrictions mentioned, anywhere on the tract of land therein described. The appropriation of the plaintiff's land, over which the defendant's road was finally located, was authorized by the grant, in the deed contained. The proceedings to condemn the right of way, which the defendant had previously acquired by the terms of said deed, was entirely superfluous. By this proceeding, it could acquire no greater or other

right than that which had been already conferred by the deed. It is contended, that any right of way through said lands of plaintiff other than that on which the house was situate would be outside of the grant. This, we think, is a misconception of the scope and meaning of the grant, as enlarged by the special clause in the deed. This clause, if we give it effect, which we must, unless repugnant to the grant which precedes it, conferred upon the defendant the right to appropriate the land conferred by the original location of its line, or any other strip thereof, upon which it might choose to finally locate and construct its roadway. Under the deed, the defendant had the right to shift the right of way, from its first location, in which the house was situate, to the present one. The instructions given by the court are in harmony with the views we have expressed, and, as no substantial ground of error is perceived in the record, the judgment of the circuit court, with the concurrence of the other judges, will be affirmed.