STEPHEN KEYL, Appellant, v. HENRY WESTERHAUS *et al.*; URIAH G. PHETZING, Administrator, Interpleader and Respondent.

**Kansas City Court of Appeals, November 10, 1890.**

1. **Gift:** INTER VIVOS V. CAUSA MORTIS. Gifts *inter vivos* have no reference to the future, but go into immediate and absolute effect and dependent on no circumstances or condition in the future. To constitute a gift *causa mortis*, the gift must be made by a

person by whom death is believed, on reasonable grounds, to be very near, and who makes the gift in view of, and because of, his approaching death.

2. ——— : ——— : EVIDENCE. A power of attorney (set out in the opinion) and the evidence in the case reviewed, and *held* not sufficient to constitute a gift *inter vivos* or *causa mortis*.

3. **Principal and Agent:** POWER OF ATTORNEY: REVOCATION: DEATH OF PRINCIPAL. A power of attorney appointing an agent is subject to be revoked, and was revoked in this case, by ordering the papers delivered to another; and the death of the principal dissolves the relationship, especially where the agent, as here, was to act in the name of his principal.

*Appeal from the LaFayette Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Fred. T. Ledergerber* and *Frederick Gottschalk,* for appellant

(1) The plaintiff held the legal title to the note. The same was indorsed by the payee and delivered to him, and he had, ever since such delivery, held it, by himself, or his agent, Biltz, or his attorneys. *Lachance v. Loeblein,* 15 Mo. App. 460; 2 Daniel, Neg. Inst. [3 Ed.] sec. 1190, and authorities cited; *Nicolay v. Fritchle,* 40 Mo. 67; *Snider v. Express Co.,* 77 Mo. 527; *Martin v. Funk,* 75 N. Y. 134; *Minor v. Rogers,* 40 Conn. 512; *Wheatley v. Purr,* 1 Kenn. 551; *Pye's Case,* 18 Vesey, 140; *Ray v. Simmonds,* 11 R. I. 266; Hill on Trustees, 130; *Exton v. Scott,* 6 Simons, 31; *Fletcher v. Fletcher,* 4 Hare, 67; *Sonverbye v. Arden,* 1 J. Ch. R. 240; *Bunn v. Winthrop,* 1 J. Ch. R. 329; *Van Cott v. Prentice,* Ct. Apps. N. Y. Jan'y, 1887; *Alger v. Bank,* March 6, 1888; *Leep v. Mossach,* 146 Mass. 418; The Recent Law of Gifts, page 400, 28 Central Law Jour.; *Bennett v. Cook,* 27 Cent. Law Jour. 90; *Paullain v. Paullain,* 79 Ga. 11–19; *Bennett v. Cook,* 28 S. C. 353; *Marston v. Marston,* 21 N. H. 513. (2)

Keyl v. Westerhaus.

Declarations of the donor are generally competent for the purpose of proving a gift. Abbott's Trial Ev. 155; *McCluney v. Lockhart,* 1 Bailey (S. C.) 117; *Scott v. Ford,* 2 N. E. Rep. (Mass.) 925. But not admissible to impeach the gift. *Sanford v. Sanford,* 5 Lans. (N. Y.) 486; *McKane v. Bonner,* 1 Bailey (S. C.) 116; *Hatch v. Straight,* 3 Conn. 31; *Bennett v. Cook,* 28 S. C. 361; Gifts *inter vivos,* in 19 Central Law Jour. 422; *Pope v. Cushing,* 19 Cent. Law Jour. 471; *Bennett v. Cook,* 28 S. C. 353; *Walter v. Ford,* 74 Mo. 196; *McCord v. McCord,* 77 Mo. 166; *Shackleford v. Brown,* 89 Mo. 546; *Trorlicht v. Weizenecker,* 1 Mo. App. 482; *Young v. Young,* 80 N. Y. 430; *Davis v. Ney,* 125 Mass. 590; *Stone v. Hackett,* 12 Gray, 227; *Lachance v. Loeblein, supra;* 2 Daniel, Neg. Inst. [3 Ed.] sec. 1190, and authorities cited; *Nicolay v. Fritchle,* 40 Mo. 67; *Hopkins v. Hopkins,* Lawyers' Rep. (R. I.) 387, decided December 26, 1889; 2 Schouler, Pers. Prop. 70; *Parker v. Ricks,* 8 Jones G. 447; *Rinker v. Rinker,* 20 Ind. 185; *Blanchard v. Sheldon,* 43 Vt. 572; *Dresser v. Dresser,* 46 Me. 48; *Dean v. Dean,* 43 Vt. 337; *Burney v. Ball,* 24 Ga. 505; *Grover, Adm'r, v. Grover,* 24 Pick. 261.

*Wallace & Chiles* and *Wm. Walker,* for respondent.

(1) The note for fifteen hundred dollars sued on, and the power of attorney of J. F. Meier to plaintiff Keyl, of date May 15, 1885, were delivered to Keyl together and at the same time, and formed parts of one transaction. Keyl, under the power, was the agent and attorney of Meier, and, as no consideration was paid therefor, such power of attorney was, in law, revoked by the death of Meier. 2 Kent's Com. [6 Ed.] s. pp. 643, 644 and 645. The power conferred on Keyl was "to collect the promissory note." The power "to collect," not having been exercised in the lifetime of Meier, ceased on his death. Such power of attorney is

not a will, nuncupative, or otherwise ; has not been probated or recorded either in New York or Missouri, and being without attesting witnesses cannot be ; hence does not pass such note as a bequest. R. S. 1879, p. 680, secs. 3962, 3972, 3976, 3984, 3988, 3992, 3993 ; *Bright v. White*, 8 Mo. 421 ; *Hale v. Hill*, 13 Mo. 618 ; *Lewis v. City of St. Louis*, 69 Mo. 595 ; *Keith v. Keith*, 80 Mo. 125 ; *Gains v. Fender*, 82 Mo. 497 ; *Keith v. Keith*, 97 Mo. 223. ( 2 ) There was no delivery of said note in the lifetime of said Johan Frederick Meier, and hence no gift *inter vivos ;* Keyl's possession was Meier's possession. "The donor must part, not only with the possession, but with dominion of the property." 2 Kent's Com. [ 6 Ed.] s. pp. 439–440. There was no exe-cuted gift. No court of equity would have compelled its delivery. 75 Penn. St. 118 ; 2 Kent's Com [ 6 Ed.] s. p. 438 ; *Zimmerman v. Spencer*, 75 Penn. St. 147 ; *Hassell v. Baskett*, 7 Cent. Law Jour. 308. "It was his property while he lived, and as the direction was a testamentary one, it became inoperative at his death. It was a mere authority which expired with him." *Hamilton, Adm'r, v. Clark*, 25 Mo. App. 428 at 436 ; *Northrop v. Hale*, 73 Me. 209 ; *Spencer v. Vance*, 57 Mo. 427, at 429 ; *Dole v. Lincoln*, 31 Me. 428 ; *Doering v. Kenamore*, 86 Mo. at 591 ; *Chivalier v. Wilson*, 1 Texas, 161 ; *Duncan v. Duncan*, 5 Litt. 12 ; 3 Redfield on Wills, 330, 331 ; *Taylor v. Henry*, 48 Md. 550. *First.* There was no order from said Meier to said Keyl to deliver such note *in præsenti*, to said church, and no delivery, actual or constructive, to the same, *in præsenti*, which is. essential to a gift. On the contrary the words of the power of attorney are not *in præsenti*, but *in futuro*, upon his death. In fact, no delivery of the note itself was ever contemplated. *Vogel v. Gast*, 20 Mo. App. 104–107 ; *Coleman v. Farral*, 1 Vesey, Jr. 50 ; *Zimmerman v. Streeter*, 75 Penn. 150, 151, 152. *Second.* Nor can the pretended gift in the case at bar be sustained

as a gift, *causa mortis ;* " such gifts are conditional like legacies, and it is essential to them that the donor make them in his last illness, or in contemplation or expectation of death." 2 Kent's Com. [6 Ed.] 444; *McCord's Adm'r v. McCord,* 77 Mo. 166, and cases cited ; *Walter v. Ford,* 74 Mo. 195. "Both possession and title must pass to the donor to constitute a gift. This applies as well to gifts *causa mortis* as to gifts *inter vivos.* The title must pass *inter vivos,* or it never can pass, but will go to the donor's legal representatives." *Hassell v. Baskett,* 7 Cent. Law Journal, *supra,* 310. Meier traveled to, and lived nearly three years in, Germany after making the power of attorney. The essentials of a gift *causa mortis* are wanting, equally with those of a gift *inter vivos. Craig, Ex'r, v. Kitbridge,* 6 Am. Law Register, page 200 ; *Walsh v. Kennedy,* 3 Cent. Law Jour. 409.

GILL, J.—The plaintiff herein brought his suit in the circuit court of LaFayette county, against Henry Westerhaus, Casper H. Uphaus and Peter Uphaus, upon a negotiable, promissory note for fifteen hundred dollars executed by them, dated on November 28, 1884, payable one day after date to the order of J. F. Meier, value received, and with eight per cent. interest, interest payable annually ; of which note, he, plaintiff, claimed to be the legal holder and owner. The defendants, by their amended answer, admit being indebted on said note, for the principal sum of fifteen hundred dollars and interest from March 8, 1888, but aver, that U. G. Phetzing as administrator of J. F. Meier, deceased, claims to be the owner of said note and entitled to the proceeds thereof ; that he has notified them of such claim ; that they are unable to determine to whom said money is due ; they pray for leave to pay the amount due, with interest and costs up to the date of their filing the answer, into court ; that said U. G. Phetzing be

notified to appear and interplead with said plaintiff for the money thus to be paid into court; and that they may be discharged from further liability.

The court then made the order as prayed for; defendants paid the money into court, and were discharged. U. G. Phetzing, administrator, entered his appearance and filed his interplea, claiming that the payee of said note, John F. Meier, departed this life in Germany, in March, 1888, leaving said note as his property in LaFayette county; that he was appointed administrator of said deceased; that he had notified the makers of said note, that he was the owner thereof as such administrator, and that it belonged to, and was assets of, the estate of said deceased. To this interplea plaintiff replied, denying that the deceased was, at the time of his death, the owner or holder of said note, but setting up, that said deceased, being the payee of said note, had, on May 15, 1885, indorsed and transferred and delivered said note to this plaintiff, with directions to hold it for the German Evangelical Lutheran Christ Congregation of the Unaltered Augsburgh Confession, of St. Louis, Missouri; that said plaintiff became and was, from said time, the legal holder of said note, in trust for said congregation; and said deceased, at the time of his death, had no interest in said note or its proceeds. Upon these issues the cause was tried before the judge, who found said issue in favor of the interpleader, and plaintiff prosecutes this appeal.

It is to be seen that the contest here is between plaintiff Keyl and interpleader Phetzing. As to the legal ownership of the fifteen-hundred-dollar note (or proceeds thereof) paid into court by defendant Westerhaus, plaintiff claims title by virtue of an alleged gift from Meier during his life, while interpleader asserts ownership as administrator of said Meier. It is clear that, unless there was a perfect legal gift to Keyl (for the use of the church organization named), then the

note (or proceeds) was properly adjudged to interpleader, Meier's administrator. The facts relied upon by plaintiff Keyl (or rather by the church society for whom he claims) are about these:

J. F. Meier, an old German residing in Missouri, in the year 1885, left the state to return to Germany. Passing through the City of New York, on May 15, 1885, he left the note in controversy, indorsed in blank with plaintiff Keyl, and along therewith a power of attorney in words as follows:

"Know all men by these presents: That I, Johan Frederick Meier, of Concordia, state of Missouri, have made, constituted and appointed, and by these presents do make, constitute and appoint, Stephen Keyl, of the City of New York, my true and lawful attorney, for me, and in my name, place and stead to collect a certain promissory note, bearing date the twenty-fifth day of November, 1884, made by Henry Westerhaus, Casper Heinrich Uphaus, and Peter Uphaus, in my favor, for the sum of fifteen hundred dollars ($1,500), and to pay the proceeds in case of my death to the German Evangelical Lutheran Christ Congregation of the Unaltered Augsburgh Confession, of St. Louis, Missouri, taking the receipt of said congregation therefor, hereby giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes, as I might or could do if personally present, with the full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitutes shall lawfully do, or cause to be done by virtue thereof.

"In witness whereof I hereunto set my hand and seal the fifteenth day of May, 1885.

"JOHAN FREDERICK MEIER, L. S."

On the same day Meier wrote to Westerhaus, the payer of the note, in effect that he (Meier) had left the

note with Keyl, and that "in the event I should die you will please pay him the note, also when I should need money you will please send it to him." Meier seems to have been in poor health. He went to Germany and never returned—died in a German hospital three years after the making of the above power of attorney. In the meantime, and during the first year of his possession of the Westerhaus note, Keyl had neglected to remit interest collected, of which Meier complained, and by his direction the note with power of attorney was turned over by Keyl to one Biltz of Missouri. Biltz collected small sums on the note ( being interest from time to time ), and sent the same direct to Meier in Germany. Biltz held the note at the time of Meier's death, and subsequently turned the same over to the attorney for the church aforesaid, taking from the church an indemnifying bond.

If this transaction of Meier, on May 15, 1885, is to be given the effect claimed for it by plaintiff, it must be for the reason that the same was an executed gift *inter vivos*, as distinguished from a gift *causa mortis ;* since, in order to constitute the latter, " the gift must be made by a person by whom death is believed, on reasonable grounds, to be very near, and who makes the gift in view of, and because of, his approaching death." 1 Pars. on Cont. 236. There was shown no such extremity as this upon Meier at that time. Some witnesses say that he ( Meier) was traveling for his health ; but there is no pretense that at the time he left the note in Keyl's hands he was then "in his last illness, and in contemplation and expectation of death," as is necessary to constitute a gift *causa mortis*. 2 Kent's Com. 444. In truth Meier journeyed to Europe after that, was then on his way, and did not die until three years after said May 15.

Now a gift *inter vivos* is a parting with the title of personal property, *in præsenti*, absolutely and irrevocably. As said by Chancellor KENT ( 2 Kent's Com. 438):

"Gifts *inter vivos* have no reference to the future, and go into immediate and absolute effect." In order to constitute a valid gift there must be a complete and irrevocable transmutation of title and possession—perfect in all things at the time the gift is made—dependent on no circumstances or condition in the future. 1 Pars. Cont. 234,

In view of this definition, how stands the transaction of May 15, 1885? In determining this question it is our duty to consider the blank indorsement of the Westerhaus note, and the power of attorney executed and delivered to Keyl—all at the same time—as one transaction. It all constituted the one act. Construed together the sum and substance was, that Meier left the note with Keyl for collection, "constituted and appointed" Keyl as his, Meir's, agent *to* collect the same, and if he, Meier, *was then dead* the said agent was authorized to pay over the proceeds to said German Lutheran church. If, when the money was collected, Meier should not be dead, then clearly such agent was bound to pay the same to Meier. This was as much the duty of Keyl as though expressly written in the face of the power of attorney. And so, too, was this the understanding of the parties to the transaction, since, as the several payments were made on the note during the three years following, the money was in each instance given over to Meier. If all had been collected, so would all have been, and should have been, paid over to Meier. By the terms, then, of Keyl's engagements, the German Lutheran church was to receive the proceeds of this note only on a certain contingency, to-wit: That, when the same should be collected, Meier should be dead. If, when the note was paid, Meier should still be living, then he would be forthwith entitled to the money, and the church left without any claim thereto. The transaction then is wanting in that certainty, that completeness, that absolute transfer of title, to make a valid gift *inter vivos. Martin v. Funk,* 75 N. Y. 134 ; *Young v.*

*Young*, 80 N. Y. 422 ; *Spencer v. Vance*, 57 Mo. 427 ; *Hamilton v. Clark*, 25 Mo. App. 428.

Keyl's relation to Meier, in the matter of this note, was simply that of agent to principal,—nothing more. Such agent's power, too, was, at any time, subject to be revoked. This, too, was clearly understood, for when Meier became dissatisfied with Keyl's manner of conducting the business, he ordered the papers delivered to Biltz, at Concordia, Missouri, and further collections were made by said Biltz. The death of the principal, Meier, had the effect to dissolve this relationship of agency ; especially is this the case where the agent, as here, was to act in the *name* of his principal. 2 Kent's Com. 646.

Our opinion thus given on the material questions of this case render it unnecessary to notice other matters of minor importance. The judgment of the circuit court was for the right party, and is affirmed. All concur.