EMMA AND JULIA GARTSIDE, Appellants, v. WM. F. PAHLMAN AND CHARLES E. GARTSIDE, Respondents.

St. Louis Court of Appeals, May 5, 1891.

Gifts: DELIVERY. In order to give validity to a gift, there must be such a delivery of the subject of it as works an immediate change in the dominion of the property.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL D. FISHER, Judge.

AFFIRMED.

*Henry H. Denison,* for appellants.

*W. E. Fisse,* for respondents.

BIGGS, J.—This is a statutory proceeding to recover the possession of a horse and surrey. The defendants to the action are only nominal parties. The contest is really between the plaintiffs and Martha Gartside, their mother. At the close of the evidence the circuit court instructed the jury that, under the pleadings and evidence, the plaintiffs could not recover. Thereupon, a nonsuit was taken, and, the court having refused to set it aside, the plaintiffs have brought the case here by appeal. This action of the court presents the only important question for our determination.

The instruction complained of was predicated solely on the fact, that, in the opinion of the court, the evidence introduced and relied on to establish the plaintiffs' title to the property was insufficient. This requires an examination by us of the evidence bearing on that issue.

It is admitted that, on the eighth day of May, 1889, Martha Gartside was, and had been for several years, the owner of the property. She was a widow, and the plaintiffs and the defendant, Charles E. Gartside, lived with her at her house on Morgan street. The horse and surrey were kept at the defendant Pahlman's livery stable, and were used by all the members of the family. The plaintiffs claim that, on the eighth day of May, 1889, their mother, in contemplation of a trip to Europe, made a parol gift of the property to them. This was denied, and it was upon this issue that the circuit court held that the plaintiffs had failed in their proof.

The only witnesses, who testified concerning the gift, were the plaintiffs and Mrs. Gartside. The stenographer's report of their testimony is quite voluminous, but we think the following extracts will serve to show

what really took place between the parties in reference to the property.

Emma Gartside testified: "*Q.* What had you to do at any time with the horse, surrey, harness and whip in controversy in this case? *A.* Well, on the eighth of May we were sitting together in the sitting room, and ma says, 'I am going to Europe; I won't have any further use for the horse and surrey; you girls may have it; but I want to ride in it as long as I remain here.' In three days afterwards, about the eleventh of May, she said: 'Emily, I have changed my mind; Charles wants to drive Mrs. Niggeman's children around, and I will take the surrey back.'

"*Q.* Where were the horse and surrey between the eighth and eleventh? *A.* Mr. Pahlman's stable.

"*Q.* Where had it been kept before that time? *A.* Same place.    * * *

"*Q.* Now, between the eleventh of May and the institution of this suit on the nineteenth of July, who had possession of that horse? *A.* Well, I think it was mine; she gave it to me, and I considered that it was in my possession.

"*Q.* What did you do about it? *A.* Well, I didn't do anything.

"*Q.* Where was the horse? *A.* Mr. Pahlman's stable.

"*Q.* Did it stay there all the time? *A.* Yes, sir. * * *

"*Q.* Between the eighth of May and the sixteenth of July did you pay for the keeping of the horse? *A.* Mother paid for it.   * * *

"*Q.* What did you have to do with Mr. Pahlman during that time about this horse and surrey? *A.* I didn't have anything to do with him.

"*Q.* You never took to Mr. Pahlman any order to keep that horse for you and your sister? *A.* No, sir; I never thought of such a thing.

"*Q.* Nor did your sister as far as you know ? *A.* No, sir.

"*Q.* Mr. Pahlman kept the horse during all that time as he had kept it before? *A.* Yes, sir.

"*Q.* On account of your mother? *A.* Yes, sir.

"*Q.* After the eighth of May, you say you used the horse ; who else used it besides you ? *A.* Brother Charles.

"*Q.* Did your mother use it at all ? *A.* Yes, sir. * * *

"*Q.* It was kept to drive just the same as it was before ? *A.* Yes, sir.

"*Q.* As your mother's ? *A.* Yes, sir."

Julia Gartside testified : "On the eleventh of May, ma stated that she would have to take back that horse and surrey ; that brother Charles wanted it to ride sister Mary's children out. Emma spoke up and said, 'You can't have it.' She replied, 'Yes, I will.' I said : 'No, ma, you have given us that horse and surrey ; that belongs to us; it is ours ; you can't take it back again.' She said she had given it to us; she acknowledged she had given it to us."

Mrs. Gartside testified : "*Q.* You remember any conversation that you had with your daughter, Miss Emma or Julia, on the eighth of May, concerning your horse and surrey ? *A.* Not with Julia, but with Emma. I promised that I thought I would give it to her, but I declined afterwards. I told her I had use for it myself.

"*Q.* What did you say to her ? *A.* I said that I was going away, and I didn't exactly know what I would do with the horse ; but I thought I would probably let her have it ; and she said, 'all right.' I think they were nearly the words that were repeated."

The witness then testified that she continued to pay the board of the horse at the stable until the sixteenth of July, when she left for Europe ; and that she left the horse in the stable, subject to the orders of her son.

The law governing the gifts of personalty *inter vivos* and *causa mortis* has become very well established in this state. The universal course of decision has been that there must be a delivery of the subject-matter of the gift. Such delivery may be either actual or symbolical, but it must be of a character to work an immediate change in the dominion of the property. *Schooler v. Schooler*, 18 Mo. App. 69 ; *Vogel v. Gast*, 20 Mo. App. 104 ; *Hamilton v. Clark*, 25 Mo. App. 428 ; *Nasse v. Thoman*, 39 Mo. App. 178 ; *Doering v. Kenamore*, 86 Mo. 588 ; *Spencer v. Vance*, 57 Mo. 427. The purport of the decisions in the foregoing cases is, that there must be such a change of the possession as to put it out of the power of the donor to repossess himself of the property. In the case of *Vogel v. Gast, supra*, this court, speaking through Judge Thompson, said : "Where, as here, the subject of the gift is in the custody of a third person, the *least* that the above rule of law can accept, as a constructive or symbolical delivery, is an order from the donor to the bailee to deliver the subject of the gift to the donee. We do not decide whether or not that would be sufficient, but we have no difficulty in holding that, where that has not been done, there has been no valid gift."

One of the reasons for this rule of law is, that all kinds of fraud and false swearing would be invited, if gifts of property were declared on evidence of the declarations merely of the donor, unaccompanied by any evidence of a delivery.

It only remains for us to apply the foregoing rules of law to the facts in the case. It seems to us that the simple statement of the evidence and the law is sufficient to show, without any argument from us, that the circuit court did right in directing a nonsuit. There is not a particle of evidence tending in the least to prove a delivery, either actual or symbolical. The property was in the custody of the defendant Pahlman as the agent or bailee of Mrs. Gartside, and the plaintiffs admit that

nothing whatever was said to him about the alleged change of ownership. The property remained at the livery stable as before ; Mrs. Gartside continued to pay for the board of the horse ; and the entire family continued to use both horse and surrey as they had previously done. There is no pretense that Mrs. Gartside parted with all control or dominion of the property, but, on the contrary, the plaintiffs themselves admit that she continued to use it as she had always done, and that she continued to pay for keeping the property as before. We will have to rule the assignment against the plaintiffs.

The plaintiffs offered, and the court excluded, testimony concerning contemporaneous gifts by Mrs. Gartside to other members of her family. We cannot conceive what bearing such testimony could have had on the issue in this case, which was delivery, or no delivery, of the subject-matter of the alleged gift. We do not think there is any merit in this assignment.

With the concurrence of the other judges, the judgment of the circuit court will be affirmed. It is so ordered.