# W. F. TYGARD, Guardian, Etc., Appellant, v. THOMAS McCOMB, Administrator, Etc., Respondent.

### Kansas City Court of Appeals, May 1, 1893.

Gifts: CAUSA MORTIS: INTER VIVOS: ACCEPTANCE: INTENTION. A father in his lifetime, while in good health and living with his second wife, drew out his deposit in his bank and placed it to the credit of his minor daughters, the children of his first wife, taking a pass book in their name therefor. He subsequently deposited small amounts and drew checks, signing the daughters' names himself. He at one time drew out $600 and loaned the same taking a note in his own name. He died, leaving the book and note with his other papers. *Held:*

(1) If the transaction placing the money to the credit of the daughters was a valid gift, they were entitled to the note as well as the remainder of the deposit.

(2) The transaction was not a gift *causa mortis,* as it was not made in his last illness and in contemplation of and expectation of death.

(3) To make it a gift *inter vivos* there must have been an absolute and unequivocal intention to pass the title and possession to the girls, without the happening of any contingency whatever; and if it was the intention of the father that the gift should take effect as a sort of *post mortem* benefaction to be his while he lived and the girls' at his death, then it was not an executed and valid gift to which the courts will give effect.

(4) The transaction being for the benefit of the children their acceptance will be assumed and the delivery of the pass-book to the father, their natural guardian, is a delivery to them.

(5) As the evidence in this case shows the intention of the father was that if anything happened to him the girls should get the money, the transaction was testamentary in its character, an attempt at a nuncupative will under circumstances not permitted.

*Appeal from the Bates Circuit Court.*—HON. JAMES H. LAY, Judge.

AFFIRMED.

*Holcomb & Smith* and *J. F. Smith,* for appellant.

(1) The evidence shows that the deposit and those made subsequently in the names of the two children, were clearly intended to be gifts to the children, and should be given the legal force and operation of gifts absolute and complete to them. *Minor v. Rogers,* 40 Conn. 512, Am. Rep. 69; *Schooler v. Schooler,* 18 Mo. App. 69; *Vogel v. Gast,* 20 Mo. App. 107; *McCoy v. Hyatt,* 80 Mo. 130. The last case cited recognizes the doctrine that the husband, father or donor may be regarded as the trustee to hold the property or thing given, as trustee for the wife, donee or beneficiary; that the relation of trustee supercedes the necessity of an actual delivery. The trustee's possession is the donee's possession. *Howard v. Bank,* 40 Vt. 597; *Ray v. Simmons,* 11 R. I. 266. (2) The deposits were made by the father for the benefit of his minor children, and his retaining the pass-book does not defeat his intention to make an executed gift to them. *Gardner v. Merritt,* 32 Md. 78; 3 Am. Rep. 115; *Kerrington v. Rantigan,* 43 Conn. 17; *Minor v. Rogers,* 40 Conn. 512, *supra; Hill v. Stevenson,* 18 Am. Rep. 231; *Blasdel v. Locke,* 52 N. H. 238; *Howard v. Bank,* 40 Vt. 597. (3) Wilson checked on deposits in his own name, and directed the bank to place it to the credit of his two girls, declaring at the same time that he meant it to be theirs; and he had the pass-book made out in their names, and took charge of it himself. This clearly constituted him their trustee, and that money and all other money afterwards deposited by him to their credit became perfected gifts to them. *Ray v. Simmons,* 23 Am. Rep. 447; *Fowler v. Bank,* 21 N. E. Rep. 172; *Scott v. Bank,* 140 Mass. 157; *Miller v. Clark,* 40 Fed. Rep. 15;

*Howard v. Bank*, 40 Vt. 597; "Gift Bank Deposit," American Annual Digest, 1892, sec. 23; Appeal of Buckingham, 60 Conn. 143. (4) The evidence shows that Wilson was acting as trustee for his children in holding the deposit book, and no delivery of it to them was necessary, Bolles on Banks and their Depositors, sec. 160, p. 147; sec. 161, p. 150. (5) In this case even though the court may find there was no gift of the deposit, yet from the evidence a voluntary trust for the benefit of the children was created and will be enforced. Such trust does not require a delivery of the subject of the trust to the beneficiary, but the trustee may retain it for their benefit. *Atkinson, Petitioner*, 16 R. I. 413; 27 Am. St. Rep. 745; *Estate of Smith*, 144 Pa. St. 428; 27 Am. St. Rep. 641. (6) If the money loaned by Wilson to Hill belonged to the two children, or was impressed with a trust by their father, then the note is theirs, though the nominal payee may have been Wilson; and if theirs, then this suit ought to be maintained by them. *Philips v. Overfield*, 100 Mo. 466; *Atkinson Petitioner*, *supra*. (7) The father was the natural guardian of the children, and as such it was his right and duty to keep possession of the deposit book, and have the control of the funds during their minority. *Williams v. Walton*, 29 Am. Dec. 122; *Daniel v. Rector*, 50 Am. Dec. 242; 10 Ark. 211; *Hillebrant v. Brewer*, 55 Am. Dec. 757; 6 Tex. 45; *Easthano v. Powell*, 11 S. W. Rep. 823.

*Silas W. Dooley*, for respondent.

(1) This is not a gift *inter vivos* or a gift *donatio causa mortis*, as all the witnesses say; it was not to take effect unless something happened to deceased and hence was not reported. *Dunn v. Bank*, 18 S. W. Rep. (Mo.)

1139, not reported; *Brabrook v. Bank*, 104 Mass. 228. Not being complete a court of equity will not decree it a declaration of trust. (2) The essentials of a gift *inter vivos* are: The gift must be complete, with nothing left undone; the property must be delivered by the donor and accepted by the donee; and the gift must go into immediate and absolute effect. If not completed during the lifetime of the donor, his death revokes the part which has been performed. American & English Encyclopedia of Law, 1313; *McCord v. McCord*, 77 Mo. 166; *Walters v. Ford*, 74 Mo. 195; *Doering v. Kenamore*, 86 Mo. 588. (3) Delivery of the property in question with the intention to give is absolutely necessary to the validity of the gift. *Dunn v. Bank, supra;* 8 American & English Encyclopedia of Law, p. 1314; *Hamilton v. Clark*, 25 Mo. App. 428; *Nasse v. Thomas*, 39 Mo. App. 178; *Gartside v. Pahlman*, 44 Mo. App. 160; *Brabrook v. Boston, supra*. Words of gift are not sufficient. *Spencer v. Vance*, 57 Mo. 427. The circumstances must be such as to show that a present gift is intended. A gift to take effect at a future time is void. 8 American & English Encyclopedia of Law, p. 1315; *Vogel v. Gast*, 20 Mo. App. 104. (4) That part of the fund withdrawn and represented by note in dispute as loaned to Mr. Hill surely was a revocation, at least to that extent, as the note was taken in Wilson's own name. Until the gift is so completed by the delivery to the donee, the donor can revoke an agent's authority and resume possession of the gift. 8 American & English Encyclopedia of Law, 1318. (5) If the transaction amounts to a testamentary disposition it is void unless in the form of a will. *Dunn v. Bank*, 18 S. W. Rep. 1139, *supra; Huey v. Huey*, 65 Mo. 689; *Sherman v. Bank*, 138 Mass; *Nutt v. Morse*, 142 Mass. [2 Eng. Ed.] 243; *Smith v. Speer*, 34 N. J. Eq. 336; *Smith v. Bank*, 4 N. Eng. Rep. 527.

GILL, J.—On September 5, 1888, and for years prior thereto, Alexander Wilson resided at Rich Hill, Missouri. He was then married to the second wife and had four living children, all by his first wife. Two of these children were of age, and two, the above named plaintiffs, Isabella and Anna, were minors.

On said September 5, 1888, Wilson went to the Rich Hill Bank, where he did business, and transferred the entire balance of his account, to-wit, $1302.97, to the joint credit of his two minor daughters, Isabella and· Anna. He got from the bank a pass-book, made out in the names of these children, wherein was entered the above deposit. He retained this in his own possession till his death in January, 1890. In addition to this other smaller sums were deposited, and he checked out from time to time different amounts, in every instance signing the names of the two girls by Alexander Wilson. The last check on the account made by him was in August, 1889, and this was on account of a loan of $600 that day made to one Hill. For this he took Hill's note payable to himself. Hill's note was renewed from time to time always made payable to Alexander Wilson, and the same, together with the bank book, was found among Wilson's papers at his death in January, 1890.

The above facts have given rise to two suits; this one being·brought by the guardian and curator of the two minor children seeking to have the court declare them entitled to the Hill note, on the ground that the money thus loaned by the father belonged to them, and the second suit was brought by the administrator against the guardian of the two infant children, asking that the balance left in the bank ($724.97), and to the nominal credit of Isabella and Anna, be decreed and held as assets of the estate of said Alexander Wilson.

Both suits are in equity, and the court below decided each case in favor of the administrator and against the infants, and their guardian appealed.

When we have settled the character of the transaction of September 5, 1888, where Alexander Wilson drew his money out of the bank at Rich Hill and replaced it to the credit of his two minor children, the determination of both these cases becomes easy. If that was a valid and effective gift, then the two children were vested with a title to the money thus deposited; and they are entitled not only to the $724.97, balance to their credit, but as well to the Hill note given for the loan of the $600.

The trial judge in terms declared, in his finding and judgment, "that the moneys so deposited by Alexander Wilson in the names of his said minor children, Isabella and Anna Wilson, was not a complete gift to them during his life, as contended for by plaintiff herein, but that the same was deposited by said Alexander Wilson subject to his own order and control, and was not intended to vest in said minors until his death." The correctness of this holding is the question here.

This was in no sense a gift *causa mortis;* it was not made if at all "in his last illness and in contemplation and expectation of death" as is necessary to constitute a gift *causa mortis.* 2 Kent's Commentaries, 444. Hence, much that is said in briefs of counsel may be eliminated. If anything, it was a gift *inter vivos.* Mr. Wilson made this deposit some eighteen months before his death and while in perfect health, it seems. His death was from an accident in a mine.

As to what will constitute a gift, or such as the courts recognize, has been so often declared that repetition is tiresome. We had occasion to say in *Keyl v. Westerhouse,* 42 Mo. App. 57, that "a gift *inter vivos* is a parting with the title of personal property *in prœ-*

*senti* absolutely and irrevocably.   As said by Chancellor Kent, 'gifts *inter vivos* have no reference to the future, and go into immediate and absolute effect.'   In order to constitute a valid gift there must be a complete and irrevocable transmutation of title and possession, perfect in all things at the time the gift is made, dependent on no circumstances or condition in the future.   1 Parsons on Contracts, 234.''   There must be a complete delivery of the thing given; such a delivery of possession as works an immediate change of dominion over the property.   *Gartside v. Pahlman,* 45 Mo. App. 160, and cases cited.   There must be an absolute and unequivocal intention by the donor to pass the title and possession at once over to the donee.   To constitute a valid gift it will not do to have it go into effect on the happening of some event in the future or at the death of the donor.   In the latter case the gift would be testamentary in character and would violate the wise provisions of the statute of wills.

In view now of these well established principles, I would state the law as applicable to this case to be this:   If, when Alexander Wilson placed this money in the Rich Hill bank to the credit of his minor children, he intended thereby to make an absolute gift *in præsenti*, intended to part with the money *at once*, and vest the title thereto in said Isabella and Anna, and no longer to retain dominion thereof on his own account, then it became a valid gift, absolute and irrevocable. But if when such deposit was made said Wilson did not intend at once to part with the title and possession, and simply placed the money to the credit of the children to take effect as a kind of *post mortem* benefaction, to be his while he lived and theirs at his death, then it was not an executed and valid gift, and the courts will not give it effect.

No importance is attached to the mere fact that he kept the pass-book and never gave it over to the children, never notified them of the deposit to their credit, and that therefore no such delivery for these reasons as would answer the purpose of a valid gift. For as the transaction was clearly for the benefit of the children their assent and acceptance of the gift would be assumed. And besides a delivery of the pass-book to their father, who was their natural guardian, would be a delivery to them. A delivery therefore to the father on their account was, under the circumstances of the case, all that could be expected. If then we were to decide this case, looking alone to the deposit in the bank and retention by the donor of the evidence of such deposit, we should not hesitate to award the money to these minor children. The following well considered adjudications would warrant the decision. *Martin v. Funk*, 75 N. Y. 134; *Willis v. Smyth*, 91 N. Y. 297; *Mabie v. Bailey*, 95 N. Y. 207; *Bobb v. Bobb*, 7 Mo. App. 508; *Minor v. Rogers*, 40 Conn. 513; *Kerrigan v. Rantigan*, 43 Conn. 17; *Gardner v. Merritt*, 32 Md. 78; *Howard v. Goodell*, 40 Vt. 597; *Ray v. Simmons*, 11 R. I. 266; *Atkinson, Petitioner*, 16 R. I. 414; *Blasdell v. Locke*, 52 N. H. 238; *Danley v. Rector*, 5 Eng. (Ark.) 224; *Hillebrant v. Brewer*, 6 Tex. 45; *Williams v. Walton*, 8 Yerg. 387; *Eastham v. Powell*, 51 Ark. 530; *Sneathen v. Sneathen*, 104 Mo. 202.

But the question arises, what was Alexander Wilson's *intention* in the matter of this deposit in the names of his minor children. Did he intend thereby to transfer the property to his infant children at once, or was it a mere attempted testamentary disposition? The *intention* is the important element in determining the character of such transactions, and such intention may be manifested by acts or words or both. *Sneathen v. Sneathen, supra*, 210; *Standiford v. Standiford*, 97 Mo.

231; *Ells v. Railroad*, 40 Mo. App. 165. After a careful consideration of the evidence adduced at the trial, we conclude with the trial court that Alexander Wilson did not make a complete gift of that money to said minor children during his life, "but that the same was deposited by him subject to his own order and sole control and was not intended to vest in said minors until his death." Wilson stated to the bank officers, when he transferred the money to the credit of the girls, that he wanted it so fixed that the money would be theirs *if anything happened to him.* He stated also to his daughter, Mrs. Watson, that the money was so placed that the stepmother should not handle it and that *if anything happened to him*, the girls would get it. Witness Hill, speaking of the loan represented by the note in controversy (and which loan was clearly from this deposit in the names of the minor children) testified: "When Mr. Wilson came over to the club rooms, and gave me the $588 in money, he said, this is some of the money that I checked out of the girl's account. Says I, what do you mean? Well, he says, just this, there is quite a number of persons here after me all the time wanting to borrow, and, in order to get rid of them, I tell them that I have no money, and what surplus funds I have on hand I just deposit to the credit of my girls."

The testimony shows conclusively too that he treated this money all the time as if his own, checking on it at pleasure. In short, the circumstances all the way through show that when he placed the deposit in the bank to the credit of the children he still regarded it as his money, but that it was his desire, *if anything happened to him*, to have it go to the said minor children. At most then Mr. Wilson attempted a *noncupative* will under circumstances by law not permitted, and it is not in the power of the courts to give it effect. In

addition to cases *supra* the following are in point: *Geary v. Page*, 9 Bosw. 290; *Sherman v. Bank*, 138 Mass. 581.

The judgment of the circuit court will be affirmed. All concur.